*In re* JOSÉ PÉREZ RODRÍGUEZ, JUEZ DEL TRIBUNAL DE DISTRITO, SALA DE RÍO PIEDRAS, querellado.

*Número:* FC-62-4      *Resuelto:* 9 de noviembre de 1964

*Hiram R. Cancio, Secretario de Justicia, José C. Aponte, Gerardo Méndez Correa, y Manuel López Carrillo, Fiscales Especiales Generales,* abogados del querellante; *Félix Ocho-*

*teco, Jr., Jorge Luis Córdova Díaz, William Fred Santiago, y Roberto Schmidt Monge,* abogados del querellado.

PER CURIAM: En 5 de septiembre de 1962, por inhibición del Juez Presidente, Sr. Negrón Fernández, el Juez Asociado Sr. Belaval determinó que existía causa, *prima facie*, para un procedimiento por conducta reprensible contra el Juez querellado Sr. José Pérez Rodríguez, y solicitó del Secretario de Justicia que radicara la correspondiente querella, a tenor de las disposiciones de la Sec. 24 de la Ley de la Judicatura, Núm. 11 de 24 de julio de 1952, según ha sido enmendada por la Ley Núm. 31 de 11 de junio de 1962.

Presentada la querella y contestada la misma, el Tribunal designó al Hon. Manuel Moreda, Juez Superior, para que en calidad de "Comisionado Especial" oyera y recibiera la prueba que las partes tuvieran a bien presentar, y la certificara al Tribunal con sus conclusiones de hecho. Celebrada la vista del caso ante el "Comisionado Especial" y recibida la prueba, el Hon. Manuel Moreda certificó la misma acompañada de las siguientes conclusiones de hecho:

### "CONCLUSIONES DE HECHOS

"I. El querellado José Pérez Rodríguez es Juez Administrador del Tribunal de Distrito de Puerto Rico, Sala de Río Piedras. En la tarde del viernes 30 de septiembre de 1960, y luego de terminadas sus horas de oficina, se detuvo un rato en compañía de algunos amigos en una cafetería que hay en la planta baja del edificio que ocupa el Tribunal de Distrito. De allí fue en busca de otros amigos al Bird's Restaurant en Hyde Park. Allí permaneció algún tiempo y luego fue a su hogar con el propósito de tomar un baño. Volvió a salir en busca de amigos que aparentemente no había localizado y se detuvo en la Cafetería San José. Durante su permanencia en los negocios antes señalados hizo uso de bebidas embriagantes, pero concluímos, como cuestión de hecho, que no estuvo en momento alguno en estado de embriaguez.

"II. La Cafetería San José está ubicada en la carretera estatal número uno frente al Centro Comercial que hay a la salida de Río Piedras para Caguas. Entre otras dependencias esta

cafetería tiene un salón que se usa para celebrar bailes. En la noche del 30 de septiembre de 1960, ese salón había sido arrendado a los miembros de la fraternidad social Alfa Eta Gama, quienes celebraban un baile con el propósito de levantar fondos para beneficio de la misma fraternidad. Los fraternos atendían la puerta de entrada y cobraban un dólar con veinticinco centavos ($1.25) a toda persona que desease entrar al salón de baile.

"III. El querellado, que desde hacía algún tiempo ocupaba una mesa con algunos amigos en la parte exterior de la cafetería, se dirigió a eso de las ocho de la noche a la entrada del salón de baile. Al tratar de entrar fue detenido por los fraternos José Hernández Longchamps y Velázquez, quienes a la sazón actuaban de porteros. Éstos le pidieron que mostrase el boleto de entrada o que pagase la cuota de $1.25 que se estaba exigiendo. El querellado se negó a pagar y a su vez insistió en que, debido a su posición de Juez de Distrito de Puerto Rico tenía derecho a entrar sin pagar. Mientras se argumentaba en relación con el supuesto derecho del querellante a entrar al salón de baile, llegó el administrador del negocio, señor Feliciano Alicea. El juez querellado, para quien Alicea era persona bien conocida, le pidió que interviniese y le aclarase a los fraternos que él, el juez, tenía derecho a entrar sin pagar. Alicea, sin embargo, sostuvo el derecho de los fraternos a cobrar por entender que se trataba de una actividad privada. Mientras el incidente que acabamos de relatar se desarrollaba, las personas envueltas estuvieron sometidas a una fuerte tensión emocional. Sin embargo, no se alteró el orden ni hubo lenguaje profano u obsceno.

"IV. Al ver fracasados sus esfuerzos por entrar al salón de baile, el querellado, usando el teléfono del negocio llamó al cuartel de la policía y pidió que enviasen una patrulla. Con motivo de su llamada comparecieron a la cafetería los policías estatales Cristóbal Santiago y Dulcinio Ramírez. Al llegar éstos, el juez se querelló de que no lo dejaban entrar al baile. Los policías se dirigieron en compañía del juez a la entrada del salón de baile. Allí hablaron con los fraternos que actuaban de porteros y los convencieron que dejasen entrar un momento al juez en compañía de ellos. La súplica fue atendida luego de comprometerse los agentes a estar en el salón sólo un momento y a salir en compañía del juez.

"V. Ni al momento de llegar la policía, ni en momento alguno se cometió delito ni en la cantina ni en el salón de baile. El juez tampoco tenía motivos fundados para sospechar que pudiese estar infringiéndose la ley en el salón de baile. Como cuestión de hecho concluimos que su interés en entrar no descansaba en la existencia de tal sospecha.

"VI. Luego de abandonar el salón de baile el querellado, verbalmente, ordenó a la policía que arrestasen al administrador Alicea. Al solicitar los agentes información sobre el delito por el cual debían practicar el arresto, el juez se limitó a insistir en el arresto de Alicea sin dar explicaciones, y sin ofrecer la información solicitada. Al ordenar el arresto, el juez, no tenía base razonable para creer que Alicea hubiese cometido delito alguno. (¹)

"VII. Confundidos por la conducta del juez y el cuadro de hechos que se les presentaba los policías llamaron por teléfono al Teniente Modesto Rodríguez con el propósito de que éste les ayudase a resolver el problema. Al llegar el oficial, el juez insistió en su orden de arresto y tampoco explicó al teniente los motivos que tenía para insistir en tal orden. En esos momentos llegó Alicea en compañía del Lic. Acevedo. Como la situación se tornaba tirante, y temeroso de que pudiese surgir complicaciones graves, el teniente decidió cumplimentar la orden dada por el querellado y llevar a Alicea arrestado al cuartel. Éste, por consejo de su abogado, Lic. Acevedo, no ofreció resistencia y acompañó al teniente.

"VIII. El Lic. Acevedo permaneció en el sitio de los hechos por algunos minutos en compañía de el juez tratando de convencer a éste de que desistiese de la actitud que había asumido contra Alicea. Sus esfuerzos fracasaron y tanto el juez como el abogado partieron en carros distintos en dirección al cuartel de la Policía de Río Piedras.

"IX. Una vez en el cuartel, el teniente empezó a subir a la segunda planta del edificio acompañado por el querellado. El Lic. Salvador Acevedo trató de acompañarlos y con motivo de ello surgió un incidente entre el abogado y el juez. Dicho incidente surgió de la siguiente manera: el querellado mani-

---

(¹) Considerando la forma en que el querellante mismo explica su conducta y la de Alicea, no hemos dado crédito a aquella parte de su declaración en donde alega que Alicea le dirigió frases insultantes.

festó que algunas personas, entre ellas el Lic. Acevedo tenían interés en eliminarlo como juez. Al protestar Acevedo, el juez le dijo "pila de mierda'. Ante este insulto Acevedo le imputó el haber conducido un vehículo de motor en estado de embriaguez. Intervino el teniente entonces y le pidió a Acevedo que se retirase continuando el querellado y el oficial de la policía hacia la segunda planta del edificio.

"X. Una vez en la segunda planta, el oficial volvió a preguntar al querellado en relación con el delito por el cual se proponía a acusar a Alicea. El querellado le informó que no se proponía acusarlo de delito alguno y que sólo había querido llevarlo al cuartel con el propósito de reprenderlo. El oficial le advirtió que no lo hiciese pues no pensaba permitir atropello de clase alguna en el cuartel.

"XI. Al regresar a la planta baja del edificio el querellado dirigiéndose al Sr. Alicea le dijo, 'usted es un hijo de la . . .' y en esos momentos intervino el teniente quien no le dio oportunidad de terminar la frase. Una vez más le advirtió al querellado que no iba a permitir que atropellase a persona alguna en el cuartel. Ante la actitud del oficial de la policía el querellado dispuso que Alicea fuese puesto en libertad.

"XII. El juez José Pérez Rodríguez, ha desempeñado sus funciones de Juez Administrador del Tribunal de Distrito de Puerto Rico, Sala de Río Piedras a satisfacción de sus supervisores administrativos."

Hemos considerado la evidencia en el récord, y aun cuando la de cargo resulta en sí misma un tanto contradictoria y difícil de precisar en cuanto a ciertas expresiones y actitudes del querellado objeto de las conclusiones IX, X y XI del Comisionado Especial, apreciada la prueba en conjunto a la luz de todos los hechos y circunstancias envueltos, el Tribunal concluye que el juez querellado Sr. Pérez Rodríguez, en ocasión de los hechos que se relacionan en las Conclusiones del Comisionado Especial, incurrió en la conducta reprensible e impropia de un magistrado que merece sanción disciplinaria a tenor de lo dispuesto en la Sec. 24 de la Ley de la Judicatura, Ley Núm. 11 de 24 de julio de 1952,

según fue enmendada por la Ley Núm. 107 de 8 de julio de 1960.

En la ocasión aludida, el Juez José Pérez Rodríguez con su actuación no se mantuvo a la altura de la norma de conducta virtuosa que ilustra el Canon Primero de los de Ética Judicial en su postulado:

"La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los Tribunales a los más altos niveles de la responsabilidad pública.

"En el ejercicio de su delicada función, aquellos llamados a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren su ministerio y estimulen el respeto y la confianza en la Judicatura."

Ante esa enunciación de lo que es y debe ser una deseable norma de conducta judicial, el Juez José Pérez Rodríguez en ocasión de esos hechos no fue lo suficientemente consciente de la posición que como juez él ocupa en la comunidad, que en todo momento y en todas partes debe producir una imagen de ejemplaridad; olvidó la trascendencia de su misión de juez y no se esforzó por que sus actuaciones en ese momento respondieran a una norma de conducta que honrara su ministerio.

■ La alta y honrosa prerrogativa de ordenar un arresto y restringir la libertad personal del ciudadano con que el Pueblo ha investido a la persona del juez, con exclusión de todo otro funcionario público por elevada que sea su jerarquía constitucional, jamás deberá usarse por el juez para propósito alguno que no sea el de la justicia que él está llamado a impartir. El querellado usó indebidamente esa prerrogativa, aun cuando fuera con el propósito de hacer valer lo que, a todas luces equivocada y erróneamente, él creía que eran sus atribuciones de juez, máxime cuando invocaba esas atribuciones para satisfacer un deseo personal.

*El Juez José Pérez Rodríguez incurrió en conducta reprensible e impropia de un magistrado. Se le impondrá san-*

*ción disciplinaria censurándolo por tal conducta reprobable en ocasión de estos hechos.*

Los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages, concurren en el resultado y manifiestan que la sanción impuesta no ha debido limitarse a censurar la conducta del querellado, sino que procedía su suspensión temporera, por requerirlo así la gravedad de los actos que se encontraron probados.

El Juez Presidente Señor Negrón Fernández no intervino, así como tampoco intervinieron los Jueces Asociados Señores Pérez Pimentel y Belaval.