El Pueblo de Puerto Rico, demandante y apelado, *v.* Isidro Escalera, acusado y apelante.

*Número:* CR-66-157    *Resuelto:* 29 de junio de 1967

*Santos P. Amadeo* y *José M. Tejada,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procuradora General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

Desde hace trece años el apelante Isidro Escalera desempeña el cargo de Oficial de Récord de la Cárcel de Distrito de San Juan.

En 17 de enero de 1966 el Tribunal Superior, Sala de San Juan, libró la siguiente:

"ORDEN

POR CUANTO: El día 17 de enero de 1966, en San Juan, Puerto Rico, el acusado ISIDRO ESCALERA cometió los siguientes hechos:

Por no haber comparecido a este Tribunal el día 17 de enero de 1966 al acto de cont. vista contra Heriberto Castro Nieves por un delito de Ases. en Primer Grado y Otros Crim. Núm. G65-1464 (y otros) a pesar de haberse citado debidamente.

POR CUANTO: Los hechos antes expuestos imputan al acusado Isidro Escalera un desacato criminal, los cuales se le informan a los fines correspondientes.

POR TANTO: A virtud de lo dispuesto en la Regla 242(b) de las Reglas de Procedimiento Criminal, el Tribunal decreta el arresto del acusado Isidro Escalera, fijándole una fianza de $————— para su libertad provisional; y por la presente se le avisa a este acusado la oportunidad de ser oído en la vista que celebrará en la Sala de este Tribunal el día 25 de enero de 1966, a las 8:30 de la mañana, en cuya vista tendrá la oportunidad de establecer su defensa, por lo cual no deba ser condenado por Desacato Criminal.

El Secretario citará a los siguientes testigos de El Pueblo para dicho acto:

---

Dada en sesión pública de este Tribunal, en San Juan, Puerto Rico, hoy 17 de enero de 1966.

[Fdo.] Guillermo A. Gil
Juez"

El día señalado para la vista compareció el querellado personalmente y asistido de abogado. El juez que presidía informó el contenido de la orden y acto seguido la representación legal del querellado le sentó a declarar. Depuso el querellado que el día 17 de enero de 1966 como entre diez y media y once y media de la mañana recibió una llamada telefónica del Márshal Seguí para que llevara al tribunal tres expedientes de tres individuos. Le informó al Márshal que no tenía transportación porque el chofer de la guagua

de la Cárcel se volvió loco y estaba haciendo gestiones para llevarlo al presidio. El Márshal le contestó que no se ocupara que él iba a llevar una gente a la cárcel "La Princesa" y lo traería al tribunal. Continúa declarando ". . . seguí haciendo las gestiones a ver cómo yo podía llevar al hombre al presidio y la cosa se me olvidó. Entonces como a las dos yo recibí la llamada otra vez y el Penal de la institución me prestó transportación y mandé los tres expedientes." Declaró que aunque el Márshal Seguí debió haber ido a la cárcel, porque llevó unos presos, él no se enteró. Explicó la razón por la cual no fue al tribunal con el Márshal en esta forma: "Bueno, porque a mí no me dijeron: 'Ahí está Seguí' ni nada; yo seguí trabajando en la oficina y también se me olvidó, porque yo tenía, había un problema serio en la institución de un hombre que el día anterior estuvo toda la noche hablando de Cristo y con la Biblia y todas esas cosas. Entonces por la mañana . . . él precisamente es el chofer de la guagua de nosotros. Entonces yo tenía que estar haciendo gestiones para sacar ese hombre de allí y llevarlo a Presidio porque él pertenece allá y seguí haciendo las gestiones en relación con ese hombre, descansando en que me iba a recordar ese momento en que tenía que venir para el Tribunal y entonces como a las dos me lo volvieron a recordar, me llamaron por teléfono y entonces mandé al suplente mío, a Marrero, con los tres expedientes y el oficial del Penal que prestó el carro de él para traer los expedientes." Otros pasajes del récord revelan lo siguiente:

"Hon. Juez:

P. ¿Y entonces usted no creyó que usted debía venir al Tribunal personalmente a darle una explicación al Tribunal por haberse olvidado por la mañana, sino que mandó un subalterno suyo a la Corte; no vino usted tampoco hasta que el Tribunal ordenó su arresto para que viniera al Tribunal? ¿Eso fue así?

R. Así fue. Digo, pero no fue mi intención más nunca desacatar ni desobedecer, sino que como en la Oficina de Récord

hay muchos problemas, especialmente ahora después de las Navidades, tanto problema, yo dije: 'Marrero, vete tú'. Porque yo puede manejar mejor la oficina que él porque yo conozco más en detalle la situación en la oficina y le dije—como era para traer los récords nada más, yo no creía que me necesitaban a mí personalmente, sino los récords—le dije: 'Marrero. llévate los récords allá inmediatamente'. Esa fue la situación." (T.E. págs. 7 y 8.)

Más adelante el juez indicó que lo que interesaba al tribunal eran los récords pero que siempre que se le citara debía preguntar si era necesaria su comparecencia personal, si podía delegar en un subalterno, que el querellado se había olvidado de la citación de la mañana y cuando se le llamó de nuevo en vez de comparecer a dar una explicación, envió a un subalterno. En esos momentos el acusado dijo:

"Vuestro Honor, con el permiso, éso es así como usted dijo de que yo envié a Marrero, pero no fue porque yo quise más nunca . . . porque en mis 13 años que yo llevo como Oficial de Récord nunca me había citado por Desacato a mí, o sea, en ninguna forma he tenido problemas con el Tribunal, pero yo creí ¿verdad? que mandando a Marrero, como lo que necesitaban eran los expedientes, más nunca se me ocurrió a mí por mi mente creer que con éso yo incurría en una falta al Tribunal. Porque el mejor servicio que se puede dar lo doy yo por el Tribunal y yo conozco los Marshal y el Hon. Fiscal y todo el mundo. Nunca en mi mente ocurrió de que yo estaba faltándole al Tribunal en esa forma." (T.E. pág. 9.)

Terminado el testimonio del querellado el tribunal le declaró incurso en desacato criminal dictando la siguiente sentencia:

"SENTENCIA

Hoy, día 25 de enero de 1966 ante este Tribunal comparecieron El Pueblo de Puerto Rico representado por el Hon. Fiscal Carlos R. Noriega y el acusado Isidro Escalera asistido de su abogado, Lic. Ludmilia Rivera Burgos. Después de leída la acusación el acusado hizo alegación de no culpable.

Vista la prueba el Tribunal declara culpable del delito de Desacato al acusado Isidro Escalera y lo condena a la pena de Cinco ($5.00) Dólares de Multa, o un día de cárcel por cada dólar que dejare de satisfacer.

Y se ordena que dicho acusado sea trasladado sin demora al cuidado del peticionario correspondiente y sea detenido por éste hasta que la sentencia se hubiere cumplido.

San Juan, Puerto Rico, a 25 de enero de 1966.

[Fdo.] Guillermo A. Gil
Juez

Certifico:

Edgardo Rivera Santini
    Secretario

Por:

[Fdo.] C. Rosario
        Sub. Sec." (T.A. pág. 8.)

La Regla 242 de Procedimiento Criminal establece el procedimiento en los casos de desacato criminal. Dicha regla dispone:

"(a) *Procedimiento sumario.* El desacato criminal podrá castigarse en forma sumaria siempre que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se cometió en presencia del tribunal. La orden condenando por desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal.

(b) *Procedimiento ordinario.* Salvo lo provisto en el apartado (a) de esta regla, en todo caso de desacato criminal se le dará al acusado previo aviso la oportunidad de ser oído. El aviso expondrá el sitio, hora y fecha de la vista, concederá al acusado un tiempo razonable para preparar su defensa, hará saber al acusado que se le imputa un desacato criminal y expondrá los hechos esenciales constitutivos del mismo. El acusado tendrá derecho a su libertad provisional bajo fianza de acuerdo con las disposiciones de estas reglas. Si el desacato se fundara en actos o conducta irrespetuosa hacia un juez, éste no podrá conocer de la causa excepto con el consentimiento del acusado." (Informe Procurador General, págs. 6 y 7.)

■ La orden o sentencia del juez no contiene una relación de los hechos constitutivos del desacato. De ser éste un requisito indispensable para la validez de la sentencia en un caso de desacato indirecto, como estamos ante una apelación de dicha sentencia, a lo sumo, la falta de tal requisito nos movería a devolver el caso para que se dictara una nueva sentencia.

La cuestión más importante planteada, sin embargo, es si a la luz de los hechos que surgen del récord, el apelante cometió un desacato criminal intencionalmente.

■ La Ley de 1ro. de marzo de 1902, según enmendada posteriormente, faculta al tribunal para castigar por desacato, entre otros casos, por "la obstinada desobediencia, u oposición intentada o realizada contra cualquier decreto, mandamiento u orden legal, expedido o dictado por algún tribunal en un pleito o proceso de que estuviere conociendo . . . ." Aunque los tribunales de jurisdicción general tienen facultad inherente para castigar por desacato— *De Torres* v. *Corte*, 58 D.P.R. 515, 525 (1941)—puede decirse que la Ley de 1ro. de marzo de 1902 antes citada, cubre los actos imputados al apelante. Bien sea en uno u otro caso, en el desacato criminal debe estar presente la intención criminal del acusado. No toda desobediencia a una orden del tribunal constituye desacato criminal si en la desobediencia falta el elemento de la intención. *Yates* v. *United States*, 316 F.2d 718; *Goldfine* v. *United States*, 268 F.2d 941; *United States* v. *De Simone*, 267 F.2d 741; Moore's *Federal Practice*, Vol. 8, § 42.04 (3).

Las manifestaciones hechas por el juez sentenciador en el curso de la vista, nos da la impresión de que de haber comparecido el acusado en la sesión de la tarde llevando consigo los expedientes solicitados, en vez de enviarlos con su ayudante, para explicar en ese momento su incomparecencia durante la sesión de la mañana, no se hubiera dictado sentencia condenándole por desacato. Dijo el juez:

"El Tribunal toma en cuenta todas esas circunstancias y si el acusado o el querellado hubiese venido por la tarde . . . . El creó un problema aquí, interrumpió la vista de un caso de asesinato que se estaba ventilando y no se sintió, no sintió la obligación de venir personalmente por lo menos a explicar su conducta al Tribunal aquella tarde, sino que todavía delegó en otra persona y envió los récords como si nada hubiese ocurrido, como si el olvido de una llamada oficial del Tribunal no fuera lo suficientemente importante para que él compareciera aquí personalmente a explicar su conducta." (T.E. pág. 11.)

■ Nos hace llegar a la conclusión de que en este caso hubo ausencia de intención criminal por parte del acusado, las siguientes circunstancias: (1) La citación se hizo al acusado por teléfono entre 10 y 11 de la misma mañana en que debía comparecer ante el tribunal llevando consigo determinados expedientes, en los momentos en que el acusado bregaba con la solución de un problema creado por un estado de locura evidenciado en el chofer de la cárcel, (2) su creencia justificada de que el alguacil Seguí le daría transportación hasta el tribunal según éste le ofreció, (3) su olvido involuntario, al nadie informarle que el alguacil Seguí había estado en la cárcel a llevar unos presos, de que tenía que comparecer a la Corte en la sesión de la mañana, (4) su creencia honesta al recibir la segunda llamada telefónica por la tarde de que lo que el tribunal interesaba eran los expedientes y no su testimonio, según resultó ser cierto, (5) su inmediata obediencia a la segunda llamada enviando los expedientes al tribunal con su ayudante, (6) se trata de un empleado que hasta ese momento, durante 13 años había cumplido con todas las órdenes de la autoridad judicial.

*En su consecuencia, debe revocarse la sentencia apelada y dictarse otra absolviendo al acusado.*

El Juez Presidente Señor Negrón Fernández no intervino.