JOSÉ PÉREZ PASCUAL, demandante y peticionario, v. NAYDA T. VEGA RODRÍGUEZ, demandada y recurrida.

*Número:* CE-88-191 *Resuelto:* 30 de junio de 1989

*Mercedes M. Bauermeister*, abogada del peticionario; *Roberto M. Miranda*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Recurre ante nos el Sr. José Pérez Pascual para que se revisen las determinaciones del Tribunal Superior que lo encontró incurso en desacato criminal y le impuso el pago de costas y gastos mediante resolución sin que mediara sentencia final.

Evaluados los escritos presentados y los autos originales del caso, procede la modificación de las determinaciones recurridas a los fines de permitirle al recurrente una oportunidad para ser oído antes de hallarlo incurso en desacato y confirmar la imposición de costas y gastos.

I

Nayda Vega Rodríguez, puertorriqueña, y José Pérez Pascual, español, se casaron en Puerto Rico en 1983. Trasladaron su residencia a España donde nació Anayda de las Mercedes, la única hija habida en el matrimonio. Al cabo de varios años, y debido a problemas conyugales, doña Nayda decidió regresar a Puerto Rico junto a Anayda y otro hijo suyo habido en un matrimonio anterior. José Pérez Pascual vino a Puerto Rico tras su hija y presentó en el Tribunal Superior de Puerto Rico, Sala de Bayamón, un hábeas corpus y una solicitud de custodia y patria potestad.

Visto el caso, las partes acordaron convertirlo a uno ordinario de custodia, se regularon las relaciones paterno-filiales

y se concedió la custodia provisional a la señora Vega. La representación legal del peticionario acordó someter una orden dirigida al Superintendente de la Policía a los fines de prohibir al peticionario abandonar el país con la niña. Posteriormente, se emitió una orden que prohibía a cualquiera de las partes trasladar de Puerto Rico a la menor. Seguido el trámite procesal del caso y estando vigente la prohibición sobre el traslado de la menor, el señor Pérez Pascual se trasladó a España con la niña. Es este incidente el que da fundamento para la imposición del desacato.

Al conocer la noticia, doña Nayda se querelló en el Cuartel de la Policía de Bayamón y se le presentó al peticionario una denuncia por secuestro.

Ante la gravedad de la situación, el tribunal de instancia emitió una orden el 10 de noviembre de 1987 que otorga al peticionario una oportunidad para que explicara por qué no debía ser encontrado incurso en desacato. Una semana después, el tribunal a quo, sin oír al peticionario, lo encontró incurso en desacato.

La recurrida decidió trasladarse a España junto a su abogado en busca de Anayda. Ya en España compareció al tribunal, quien decretó el traslado de la niña a la isla. Pero como condición al traslado, la orden de arresto emitida contra el señor Pérez Pascual tenía que dejarse sin efecto. Se archivó el caso de secuestro y se dejó sin efecto la orden de arresto. El señor Pérez Pascual, la señora Vega, su abogado y la menor regresaron a la isla. El 27 de enero de 1988 la recurrida presentó ante el foro de instancia un memorando de gastos y costas relacionado con su imprevisto viaje a España y solicitó al tribunal que impusiera al señor Pérez Pascual el pago de $11,117.91. El peticionario se opuso. Luego de examinada la oposición, el tribunal de instancia impuso al señor Pérez Pascual el pago de las costas y condenó al peticionario a no-

venta (90) días de cárcel por haber desacatado una orden del tribunal.(1)

No conforme con esta determinación del foro de instancia, el señor Pérez Pascual recurre ante nos alegando que no se siguió el procedimiento establecido por la Regla 242 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que exige una vista antes de imponer un desacato ordinario, y que no procedía la imposición de costas ante la ausencia de una sentencia final.

Por la importancia que reviste este tipo de caso en nuestro ordenamiento y en la convivencia social, y por la frecuencia de problemas similares en nuestros tribunales, expedimos el auto y hoy hacemos nuevos pronunciamientos con la esperanza de disminuir este tipo de incidente que, en última instancia, perjudican a la parte más débil: los menores.

## II

En primer orden, procedemos a evaluar la determinación del juez de instancia que halló al peticionario incurso en desacato.

El Art. 235 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4431, y la jurisprudencia han tipificado la conducta que da lugar a una imposición de desacato. Será sancionado con pena de reclusión o multa, a discreción del tribunal, aquel que desobedezca cualquier decreto, mandamiento, citación u otra orden legal expedida por el tribunal. *Pueblo v. Escalera*, 95 D.P.R. 148 (1967).

---

(1) Posteriormente, la señora Vega presentó demanda de divorcio. Los lamentables incidentes entre esta pareja continuaron y provocaron una serie de mociones de la parte demandante para pedir la regulación adecuada de las relaciones paterno-filiales. En vista de que el recurso de *certiorari* interpuesto se limitaba a pedir la revisión de las determinaciones antes descritas, este Tribunal, mediante Resolución de 21 de julio de 1988, ordenó al tribunal de instancia continuar con los procedimientos referentes al acuerdo de las relaciones paterno-filiales y la intervención de la Procuradora para Asuntos de Familia.

■ Reiteradamente nos hemos pronunciado sobre la existencia del poder inherente de los tribunales para vindicar la majestad de la ley y para hacer efectiva su jurisdicción y sus pronunciamientos. *Sterzinger v. Ramírez*, 116 D.P.R. 762 (1985).

■ De igual manera, la Regla 242 de Procedimiento Criminal, *supra*, establece el procedimiento necesario a seguir en casos donde ha habido una conducta que pudiese dar lugar a la imposición de un desacato. Se distingue entre el desacato sumario y el ordinario al establecerse que solamente en casos de un procedimiento sumario, donde el juez certifica que vio u oyó la conducta constitutiva de desacato, se prescindirá del requisito de vista. Sin embargo, los casos donde una parte ha desobedecido una orden emitida por el tribunal se catalogan como desacato ordinario y siempre requieren que al acusado se le dé una oportunidad para ser oído.

■ En innumerables ocasiones hemos reafirmado esta norma. *Pueblo v. Escalera*, supra; *Pueblo v. Ortiz Padilla*, 102 D.P.R. 736 (1974). De hecho, en casos anteriores donde nos hemos enfrentado a incidentes similares en las salas de relaciones de familia, hemos establecido que la desobediencia a una sentencia de un tribunal puede ser un desacato criminal. *Guzmán Vega v. Piñero Piñero*, 91 D.P.R. 704 (1965); *Pérez v. Espinosa*, 75 D.P.R. 777 (1954).

Recientemente tuvimos la oportunidad de considerar una situación similar en el caso de *Sterzinger v. Ramírez*, supra. Allí la madre de una menor se trasladó con ésta a otra jurisdicción, violando así una orden de este Tribunal. En aquella ocasión expresamos:

El tribunal de instancia debe celebrar a la mayor brevedad posible una vista para determinar si la licenciada Candelario o terceras personas han incurrido en desacato criminal por de-

sobedecer cualesquiera de las órdenes, resoluciones y sentencias, particularmente el dictamen del tribunal a quo del 4 de septiembre de 1985 que prohíbe que se remueva a la niña de la jurisdicción de Puerto Rico sin previa autorización judicial. El tribunal *debe celebrar una vista de acuerdo con la Regla 242 de Procedimiento Criminal y determinar si la parte recurrida violó el Art. 235(b) del Código Penal,* 33 L.P.R.A. sec. 4431(b). (Énfasis nuestro.) *Sterzinger v. Ramírez,* supra, pág. 787.

En el caso de autos, la conducta del peticionario puede conducir a la imposición de un desacato. Sin embargo, por una confusión del juez de primera instancia, se encontró incurso en desacato al peticionario el 17 de noviembre de 1987 sin haberse celebrado vista. Un examen de la minuta de la vista celebrada el 10 de noviembre de 1987 revela que al señor Pérez Pascual se le había citado para que mostrara causa por la cual no debía ser encontrado incurso en desacato, según el procedimiento establecido por la Regla 242 de Procedimiento Criminal, *supra.* Esta era la vía correcta a seguir y así lo admite honestamente la representación legal de la recurrida.

### III

■ La ley federal conocida como el *Parental Kidnapping Prevention Act* (P.K.P.A.), 28 U.S.C. sec. 1738A, fue promulgada para proteger la eficacia y validez que tiene un decreto de custodia emitido por un estado al ejercer válidamente su jurisdicción. Un estado está obligado a otorgarle entera fe y crédito a un decreto de custodia emitido válidamente por otro estado. Se perseguía eliminar el *forum shopping* y evitar el secuestro de menores por el padre a quien le habían negado la custodia. S.T. Dickens, *The Parental Kidnapping Prevention Act: Application and Interpretation,* 23 J. Fam. L. 419 (1984–1985).

■ El P.K.P.A. se hizo extensivo a Puerto Rico y a los territorios norteamericanos. 28 U.S.C. sec. 1738A. Cuando Puerto Rico es la jurisdicción de "residencia" bajo las disposiciones de dicha ley, las determinaciones de nuestros tribunales deben ser respetadas por otras jurisdicciones estatales. *Sterzinger v. Ramírez*, supra; *Perron v. Corretjer*, 113 D.P.R. 593 (1982). De igual forma, venimos obligados a otorgarle entera fe y crédito a un decreto de custodia emitido válidamente por cualquier estado norteamericano.

■ Como parte del esquema elaborado por el P.K.P.A., se establece la concesión de honorarios y costas a aquel padre custodio a quien le han arrebatado al niño o le han privado del derecho de visita sin autoridad para ello. Entre los gastos a compensarse se encuentran los gastos necesarios para viajes, honorarios de abogado, investigaciones privadas, arancel de testigos y otros.

■ Al imponer este tipo de carga económica se persigue desalentar la práctica de remover a un menor de la jurisdicción, luego que ha habido una determinación de custodia, en busca de otro foro donde se pueda obtener la custodia provisional. Cualquier traslado de un menor a Estados Unidos, violando así un decreto de custodia de un tribunal local, automáticamente activa la aplicación de este estatuto y de su disposición sobre la imposición de costas.

Los tribunales estatales norteamericanos, mucho tiempo antes de la aprobación del P.K.P.A. y bajo el *Uniform Child Custody Jurisdiction Act*, antecesor del P.K.P.A., habían concedido costas en situaciones similares a la de autos a aquella parte que incurría en éstas al tratar de averiguar el paradero del menor y obtener su traslado a la jurisdicción que había emitido el decreto de custodia. *Montgomery v. Crum*, 161 N.E. 251 (1928); *Spencer v. Terebelo*, 376 So. 2d 960 (1979); *Brown v. Brown*, 61 N.W.2d 656 (1953); *Kajtazi v.*

*Kajtazi,* 488 F. Supp. 15 (D. N.Y. 1978); *Lloyd v. Loeffler,* 539 F. Supp. 998 (D. Wis. 1982); *Etzion v. Evans,* 276 S.E.2d 577 (1981); *Harvey v. Harvey,* 259 S.E.2d 456 (1979). Incluso se estableció que una tercera persona que imposibilita el ejercicio de custodia del padre que así la tiene es responsable al padre por los daños causados. *Plante v. Engel,* 469 A.2d 1299 (N.H. 1983).

 Para evitar que un padre no custodio decidiera trasladar el menor a una jurisdicción extranjera, y así evitar la aplicación del P.K.P.A., se elaboró en 1980 un tratado internacional conocido como *The Hague Convention of the Civil Aspects of International Child Abduction. Exhibit* 23. Éste fue suscrito por Estados Unidos y posteriormente ratificado por España en 1986.

En términos generales, dicho tratado es similar al P.K.P.A. Prevé para el regreso de un niño que ha sido removido ilegalmente del padre custodio y le otorga validez y eficacia a un decreto de custodia otorgado por un país participante. *Exhibit* 23.

El propio tratado establece en su Art. 26 la imposición de costas cuando se ha incumplido con un decreto de custodia o cuando las autoridades lo estimen conveniente. Se compensan gastos similares a los compensados por el P.K.P.A.: honorarios de abogado, gastos incurridos en viajes para localizar al menor, el costo de investigaciones privadas y cualquier otro gasto necesario.

IV

 En nuestra jurisdicción normalmente la imposición de costas en un pleito está reglamentada por la Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Éstas serán concedidas a aquella parte que resulte victoriosa concluido el proceso de imposición de sentencia. Solamente podía reclamarse como costas los gastos en que se ha necesariamente

incurrido en la tramitación del pleito. Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Las expresiones de este Tribunal han sido compatibles con la anterior regla. *Asoc. Pro M.P.A. v. U.S.I. Props.*, 115 D.P.R. 137 (1984); *González v. Marvel*, 58 D.P.R. 855 (1941).

■ Sin embargo, para conceder costas interlocutorias no es necesario apartarse de lo establecido en la Regla 44.1 de Procedimiento Civil, *supra*, ya que nuestra Regla 44.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III,(2) que no tiene precedente en reglas locales anteriores o en la reglamentación federal, permite en su primera parte la imposición de costas interlocutorias a una parte *a favor de cualquier otra* cuando el tribunal, luego de determinar que la parte ha incurrido en conducta constitutiva de demora, inacción, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia, lo estime conveniente. Se pretende agilizar los procedimientos y evitar la congestión en nuestros tribunales. Véase J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, págs. 248–249.

La recurrida plantea que la referida regla solamente permite la imposición de costas interlocutorias a favor del Estado. A esos fines cita como precedente a *Lluch v. España Service Sta.*, 117 D.P.R. 729 (1986), y a *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 D.P.R. 679 (1987). No tiene razón.

Un examen detallado y cuidadoso de los casos citados revela que lo único que interpretan es la segunda parte de la regla, que sostiene la imposición de sanciones económicas

---

(2) La referida disposición establece:

"El tribunal podrá imponer costas interlocutorias a las partes, y sanciones económicas en todo caso y en cualquier etapa a una parte y a favor del Estado por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia." 32 L.P.R.A. Ap. III, R. 44.2.

*siempre* a favor del Estado. Nada se dice sobre la imposición de costas interlocutorias permitidas por la primera parte de la regla. Por lo tanto, aun en ausencia del tratado internacional suscrito por Estados Unidos y España, procede la imposición al peticionario de aquellos gastos relacionados con el viaje que, al amparo de esta disposición, cualifican como costas. *Garriga, Jr. v. Tribunal Superior*, 88 D.P.R. 245 (1963).

El señor Pérez Pascual conocía del decreto del tribunal que impedía el traslado de la menor. De hecho, fue su representación legal quien lo sometió al tribunal. A pesar de esto, se aprovechó de una de las horas de visita establecidas por el foro de instancia, al regular las relaciones paterno-filiales, y partió con la menor hacia España. No podemos justificar ni sancionar la actitud del peticionario. De estimarlo procedente, éste tenía un remedio en ley para conseguir una revisión de las relaciones paterno-filiales. Si pensaba que los intereses de la menor eran mejor servidos con un nuevo decreto de custodia provisional o con un nuevo acuerdo sobre relaciones paterno-filiales, debió plantearlo al tribunal. En estos casos son los tribunales de justicia los llamados a proteger los intereses de los menores. No podemos permitir que una parte en una controversia actúe al margen del procedimiento judicial.

La inesperada ausencia de Anayda de las Mercedes precipitó una cadena de eventos desgarradores para la vida de todas las personas involucradas en este conflicto familiar. La decisión del padre obligó a la madre a viajar a España y recuperar a su querida hija en los tribunales de ese país incurriendo en innumerables gastos. Si el señor Pérez Pascual hubiera trasladado la menor a Estados Unidos, la determinación del tribunal de instancia no podía ser cuestionada. El hecho de que la menor haya sido trasladada a España no debe ser óbice para dejar de imponer al señor Pérez Pascual

el pago de costas por su incumplimiento a una orden del tribunal.

El peticionario plantea que en esta jurisdicción los honorarios de abogado no forman parte de las costas y, por lo tanto, no pueden ser concedidos a través de un memorando de costas. Aun cuando dicha aseveración es cierta —*Andino Nieves v. A.A.A.*, 123 D.P.R. 712 (1989); *Colondres Vélez v. Bayrón Vélez*, 114 D.P.R. 833 (1983); *Pereira v. I.B.E.C.*, 95 D.P.R. 28 (1967); *Garriga, Jr. v. Tribunal Superior*, supra; *Sucn. Arroyo v. Municipio*, 81 D.P.R. 434 (1959)— la naturaleza especial de este tipo de caso y la aplicabilidad en nuestra jurisdicción del tratado internacional que concede honorarios de abogado en un caso como el de autos nos requiere que nos desviemos de las reglas establecidas. Solamente en casos excepcionales como el de autos —donde se ha privado de la custodia al padre que la obtuvo y éste ha tenido que incurrir en gastos inesperados por concepto de honorarios de abogado[3] para vindicar su derecho— para proteger la jurisdicción del tribunal sobre una materia de tan vital interés público para el Estado como lo son las relaciones entre los padres y sus hijos, y a la luz del tratado antes descrito, concedemos honorarios de abogado interlocutorios como parte de los gastos a compensarse. La protección de nuestros menores así nos lo exige.

Los casos donde se ha privado ilegalmente de la custodia de un menor al padre que la obtuvo válidamente requieren la comparecencia al tribunal para que, bajo el am-

---

[3] Los honorarios reclamados son aquellos en los que se ha incurrido en la comparecencia al tribunal en España:

(a) $3,959.51 por concepto de servicios prestados por el Lcdo. Roberto Miranda, abogado de la recurrida, y

(b) $2,000.00 por concepto de honorarios pagados a la Lcda. Ángela Rotllán, abogada española quien representó a la recurrida en el foro español.

paro de las leyes aplicables, se haga valer el decreto de custodia. Esta gestión requiere la contratación de abogados que representen a la parte en el proceso. No conceder honorarios de abogado en esta situación equivaldría a penalizar al padre custodio que acudió al sistema jurídico a vindicar su derecho.

■ Anteriormente hemos establecido que, para cumplir a cabalidad con los propósitos de nuestro ordenamiento procesal, se requiere un enfoque integral, pragmático y creativo. *Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283 (1988). Las propias Reglas de Procedimiento Civil permiten adoptar nuevas directrices al establecer que, "[c]uando no se hubiere previsto un procedimiento específico en estas reglas, el tribunal podrá reglamentar su práctica en cualquier forma que no sea inconsistente con las mismas o con cualquier disposición de ley aplicable". 32 L.P.R.A. Ap. III, R. 71. Hoy lo hacemos porque la naturaleza especial de este tipo de caso nos obliga a apartarnos de la norma establecida.

■ En vista de nuestro interés primordial por proteger a los menores y evitar incidentes —como el del caso de autos— que pueden afectar adversamente su futuro desarrollo, establecemos como norma que aquella parte que incumpla con un decreto de custodia emitido válidamente por nuestros tribunales podrá ser requerida a pagar las costas y honorarios de abogado interlocutorios incurridos por la parte a quien se le había otorgado la custodia y se vio privada de ella. Los tribunales de instancia, a base de su mejor juicio y de la prueba desfilada, determinarán la razonabilidad y necesidad de las costas y de los honorarios interlocutorios reclamados. Tomarán en cuenta que podrán ser compensados los honorarios de abogado, los gastos de transportación y viajes, los gastos de investigaciones privadas y cualquier otro gasto directamente relacionado con el incumplimiento del decreto de

custodia. Recalcamos la importancia de que el juez de instancia evalúe los gastos reclamados para evitar la concesión de gastos excesivos.

██ En el caso de autos, el foro de instancia estimó que los gastos eran razonables. No procede nuestra intervención con esta determinación a menos que exista error manifiesto o que el juzgador de los hechos fue movido por prejuicio o parcialidad. *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984). Ninguno de esos elementos fue probado en este caso.

Por los fundamentos antes expuestos, *se confirmará la resolución que impone el pago de costas y honorarios de abogado interlocutorios al peticionario, y se modificará aquella que halló al peticionario incurso en desacato a los fines de devolver el caso al tribunal de instancia para que se celebre la vista requerida por la Regla 242 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.