*In re* HÉCTOR VELÁZQUEZ HERNÁNDEZ, JUEZ MUNICIPAL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE BAYAMÓN, querellado.

*Número:* AD-2002-4          *Resuelto:* 23 de junio de 2004

*Rolando Fernández González*, querellante; *Ivonne Díaz Pérez*, abogada de la Oficina de Administración de los Tribunales, querellante; *Lirio Bernal Sánchez*, directora administrativa de la Oficina de Administración de los Tribunales; *Hon. Héctor Velázquez Hernández*, juez querellado; *Jayson N. Ramos Pérez*, abogado de la parte querellada; *Aida N. Molinary De la Cruz*, presidenta de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces o Juezas; *Flavio E. Cumpiano*, comisionado asociado de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces o Juezas.

PER CURIAM:

I

El 30 de enero de 2001 el Sr. Rolando Fernández González presentó una queja juramentada contra el Hon. Héctor Velázquez Hernández relacionada con la conducta del magistrado en dos casos en los que el quejoso fue parte. Luego de la investigación correspondiente, la Oficina de Administración de los Tribunales presentó un informe que fue referido a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces o Juezas (Comisión). El Hon. Flavio E. Cumpiano Villamor, comisionado, determinó la existencia de causa probable para iniciar un procedimiento disciplinario contra el juez Velázquez Hernández.

Así las cosas, el 16 de diciembre de 2002 se presentó la querella, en la que se le imputó al querellado dos cargos

por infringir los Cánones I, XVI, XVII y XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV-A.([1]) En su contestación a la querella, el juez Velázquez Hernández negó que hubiese actuado en contravención a los Cánones de Ética Judicial. Luego de varios incidentes procesales, el 24 de marzo de 2004 la Comisión rindió un informe, del que surge el trasfondo fáctico que exponemos a continuación.

El Hon. Héctor Velázquez Hernández fue designado Juez Municipal el 10 de octubre de 1996 y comenzó sus labores en la sala de Aibonito. El 1ro de septiembre de 2000 fue asignado a la sala de Bayamón, donde ha permanecido hasta el presente. El 19 de septiembre de 2000 las Sras. Xiomara Torres Colón y Yesenia Mojica Vázquez solicitaron una orden de protección al amparo de la Ley Núm. 284 de 21 de agosto de 1999 (33 L.P.R.A. sec. 4013 *et seq.*), conocida como la Ley Contra el Acecho, contra el señor Fernández González. A dicha querella le fue asignado el número OPA-2000-814. El 20 de diciembre de 2000 la señora Torres Colón presentó otra querella contra el señor Fernández González, en esta ocasión en virtud de la Ley

---

([1]) *"Primer cargo*

"El [Juez Velázquez Hernández] incurrió en conducta impropia, incompatible con su función judicial, consistente en que se negó a escuchar al Sr. Rolando Fernández González en relación a la Querella OPA-00-815 ... que éste interpuso contra dos damas que eran sus inquilinas en cierto inmueble.

"El [Juez Velázquez Hernández] exhibió actitud irrespetuosa, fuerte tono de voz, impaciencia, severidad excesiva, agresividad y carencia de temperamento judicial, todo lo cual afectó sus actuaciones judiciales infringiendo los Cánones I, XVI, y XVII de Ética Judicial.

*"Segundo cargo*

"El [Juez Velázquez Hernández] incurrió en conducta impropia, incompatible con su cargo, consistente en que no demostró diligencia en el desempeño de sus funciones judiciales al dejar de examinar responsablemente dos (2) expedientes relacionados entre sí, lo cual privó al Sr. Rolando Fernández González de su derecho a ser oído y explicar su reclamo debidamente presentado en una querella. El [Juez Velázquez Hernández] tampoco orientó al [Sr.] Rolando Fernández González sobre el alcance de su dictamen, lo que provocó un malentendido donde el Querellado, haciendo uso indebido de la autoridad investida en él, privó al [señor] Fernández González de su libertad, al encontrarle incurso en desacato sumario en corte abierta.

"Al así actuar, el [Juez Velázquez Hernández] infringió el Canon XXVI, lo cual privó al quejoso del debido procedimiento de ley." Informe de la Comisión, págs. 2–3.

Núm. 140 de 23 de julio de 1974 (32 L.P.R.A. sec. 2871 *et seq.*), conocida como la Ley sobre Controversias y Estados Provisionales de Derecho.[2] Ese mismo día el señor Fernández González y su esposa, la Sra. Luz I. Lozada, solicitaron una orden de protección contra las señoras Torres Colón y Mojica Vázquez, a la luz de la Ley Contra el Acecho. Dicha querella fue enumerada OPA-00-815.

El 26 de diciembre de 2000 las partes comparecieron ante el Juez Velázquez Hernández para dilucidar las querellas OPA-2000-814 y Q-2000-814, es decir, las instadas por las señoras Torres Colón y Mojica Vázquez contra el señor Fernández González. En esa ocasión el señor Fernández González le informó al juez Velázquez Hernández que en la querella presentada por él, OPA-2000-815, se había señalado una vista para el día siguiente. El juez Velázquez Hernández ordenó verbalmente la consolidación de los casos y los expedientes fueron llevados a sala. Celebrada la vista, el juez Velázquez Hernández falló a favor de las señoras Torres Colón y Mojica Vázquez. Alegadamente ordenó el archivo de la querella presentada contra éstas por el señor Fernández González, aunque no se emitió una resolución a esos efectos. El juez Velázquez Hernández únicamente anotó lo siguiente en un formulario titulado *Notas del Juez*: "26 de diciembre de 2000 Comparecen ambas partes. Escuchada la prueba se ordena archivo de petición. Véase OPA-00-814. Firmada y sellada Héctor Velázquez Hernández, Juez Municipal."[3] La Comisión indicó que un examen del referido formulario da la impresión que esta nota fue intercalada luego de los incidentes de la vista, por lo que la querella instada por el señor Fernández González no fue archivada ese día. Señaló, además, que no existe

---

[2] Dicha querella fue enumerada Q-2000-814.

[3] Esta anotación fue archivada en el expediente de la querella OPA-2000-815, presentada por el señor Fernández González contra las señoras Torres Colón y Mojica Vázquez.

evidencia de que el juez Velázquez Hernández tuviese ante sí el expediente de la querella instada por el señor Fernández González al momento de celebrar la vista.

De otra parte, en el expediente de la querella presentada por las señoras Torres Colón y Mojica Vázquez, OPA-2000-814, el juez Velázquez Hernández hizo constar lo siguiente en el formulario *Notas del Juez*:

> Querellante alega que querellado la persigue. No la deja tranquila. Quiere botarla de la casa. Le grita. Molesta a sus familiares y amigos.
> Querellado alega que le debe 3 meses de renta. Alega que todo es falso.
> Escuchada la prueba se expide O.P.A. por 3 meses.
> 26 de diciembre de 2000
> Firmada Héctor Velázquez Hernández, Juez Tribunal de Primera Instancia

Al finalizar la vista el 26 de diciembre de 2000, el señor Fernández González acudió donde la Secretaria Auxiliar, Sra. Suhaily Quiñones Rodríguez, a solicitar información con relación a la querella presentada por él. La señora Quiñones Rodríguez le informó que el juez Velázquez Hernández había archivado su querella. El señor Fernández González se alteró y solicitó ver al juez Velázquez Hernández. Éste lo escucho en su oficina, por el alto tono de voz utilizado por el señor Fernández González, y ordenó que lo llevaran a sala para atenderlo. El juez Velázquez Hernández trató de explicarle que había ordenado el archivo de su querella, pero el señor Fernández González continuaba hablando en voz alta, ignorando las expresiones que hacía el juez. En dos ocasiones el juez Velázquez Hernández se vio precisado a pedirle que permaneciera en silencio mientras él hablaba. El señor Fernández González —molesto e insistiendo en explicar la situación— movía la cabeza, colocó su mano en el podio y, aunque se encontraba de frente al juez Velázquez Hernández, viró la cara mientras éste le explicaba lo ocurrido con la querella. En vista de que el señor

Fernández González continuaba hablando en voz alta sin prestar atención a lo que el juez Velázquez Hernández decía, éste lo declaró incurso en desacato sumario y ordenó su encarcelamiento por treinta días.

El señor Fernández González fue llevado a la celda del tribunal. Unos minutos más tarde, el juez Velázquez Hernández dejó sin efecto la orden de arresto y ordenó que la querella instada por el señor Fernández González pasara a la atención de otro juez.([4]) Con relación a este incidente, no se levantó una minuta ni se emitió una orden de arresto. Únicamente el juez Velázquez Hernández hizo constar en el expediente de la querella OPA-2000-815 lo siguiente, en el formulario *Notas del Juez*:

26 de diciembre de 2000 — Comparece querellante y le hace frente al tribunal cuestionando sobre qu[é] expediente estaba leyendo y a qui[é]n había citado o no. Al llam[á]rsele la atención le dio la espalda al tribunal. Se ordena arresto por desacato sumario al tribunal. En reconsideración se deja sin efecto orden de arresto por desacato luego de pasadas las partes ante el tribunal nuevamente. Firmada Héctor Velázquez Hernández, Juez del Tribunal de Primera Instancia.

Analizada la prueba presentada ante la Comisión, ésta determinó que el juez Velázquez Hernández infringió los Cánones I, XVI y XVII de Ética Judicial, *supra,* y recomendó que éste fuera sancionado con una amonestación. A la luz de la prueba que consta en autos, procedemos a resolver.

## II

Dentro de nuestra estructura política, social y jurídica, los jueces y las juezas ocupan una posición de singular importancia, ya que su nombramiento es producto

---

([4]) La querella fue referida a la Hon. Albis C. Rivera Medero, jueza municipal.

del consenso entre las Ramas Legislativa y Ejecutiva de gobierno quienes, a su vez, depositan en éstos la confianza del pueblo en que la administración de la justicia recaerá sobre personas con una conducta irreprensible. *In re Martínez González*, 151 D.P.R. 519 (2000); *In re Robles Sanabria*, 151 D.P.R. 483 (2000). Debido al alto ministerio que ejercen los jueces y las juezas, están obligados a exhibir un comportamiento que refleje imparcialidad, entereza y convicción. *In re Campoamor Redín*, 139 D.P.R. 909, 920 (1996). La confianza del pueblo en el sistema judicial exige, no únicamente que los jueces y las juezas actúen correctamente, sino también que promuevan la impresión de que actúan conforme a los más altos principios morales. *In re Hon. Maldonado Torres*, 152 D.P.R. 858 (2000); *In re Nevárez Zavala*, 123 D.P.R. 511, 524 (1989); *La Judicatura Puertorriqueña*, Secretariado de la Conferencia Judicial de Puerto Rico, 1981, pág. 149.

■ Para asegurar el cumplimiento de estos postulados, la Constitución del Estado Libre Asociado, en su Art. V, Sec. 13 (L.P.R.A., Tomo 1, ed. 1999, pág. 393) confiere autoridad a este Tribunal para llevar a cabo los procedimientos disciplinarios relacionados con los jueces y las juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones. En virtud de dicha autoridad, fueron aprobados los Cánones de Ética Judicial, que constituyen normas mínimas de conducta que deben ser observadas por todos los miembros de la Judicatura. 4 L.P.R.A. Ap. IV-A, C. 26. Al juez Velázquez Hernández se le imputa haber actuado en contravención a los Cánones I, XVI y XVII de Ética Judicial, *supra*.

■ El referido Canon I, como precepto general, establece la importancia de que con su conducta los jueces y las juezas ayuden a mantener la fe del pueblo en la justicia

a través de su integridad e imparcialidad.([5]) Estas cualidades deben exhibirse tanto en la vida pública como en la privada. R.J. Torres Torres, *Cánones de Ética Judicial de Puerto Rico*, IX (Núms. 1–4) Forum 7 (octubre 1993). De otra parte, el Canon XVI, *supra*, requiere que al desempeñar su función los jueces y las juezas salvaguarden la dignidad de los seres humanos mediante el trato cortés y respetuoso a los abogados, testigos, jurados, funcionarios del tribunal y a todas las personas que comparezcan ante ellos.([6]) Finalmente, el Canon XVII, *supra*, impone a los jueces y a las juezas la obligación de mantener el orden y decoro en el tribunal a través de su propia conducta.([7])

 Los Cánones XVI y XVII, *supra*, regulan el

---

([5]) Dicha norma establece:

"La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.

"En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura." 4 L.P.R.A. Ap. IV-A, C. I.

([6]) De acuerdo con el citado canon:

"La Jueza o el Juez debe ser considerado y respetuoso con los abogados y las abogadas, especialmente con aquellas personas que comienzan a ejercer la profesión. Ha de serlo también con los o las testigos, jurados, funcionarios o funcionarias del tribunal y todos los que comparezcan ante él o ella. Sin embargo, debe evitar atenciones desmedidas hacia estas personas. Velará, además, porque los abogados y las abogadas y los otros funcionarios o funcionarias o empleados o empleadas del tribunal bajo su dirección mantengan igual conducta." 4 L.P.R.A. Ap. IV-A, C. XVI.

([7]) Este precepto dispone, en lo pertinente:

"El Juez o la Jueza dirigirá los trabajos del tribunal con orden y decoro y estará alerta contra todo proceder que pueda afectar la dignidad y el respeto debidos al tribunal. Intervendrá para impedir cualquier conducta impropia de las partes, los abogados y las abogadas o cualquier otra persona, y tomará la acción que en su discreción proceda de acuerdo con la ley, los Cánones de Ética Profesional y las mejores tradiciones del sistema judicial.

"En el curso de los procedimientos judiciales, el Juez o la Jueza mantendrá su actitud general, sus manifestaciones y el tono de su voz dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco hará comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa; ni ridiculizará de modo alguno a los abogados o las abogadas, las partes, los o las testigos, funcionarios o funcionarias del tribunal o a otras personas que a él o ella acudan." 4 L.P.R.A. Ap. IV-A, C. XVII.

comportamiento de los jueces y las juezas en sala, ya que éste es uno de los factores que más contribuye a elevar o erosionar la confianza en la Judicatura. L.M. Negrón Portillo, *Ética y disciplina judicial en Puerto Rico*, [s. l.], [s. Ed.], 1987, pág. 136. Los jueces y las juezas, junto con los abogados y las abogadas, son responsables de preservar la dignidad de los procedimientos judiciales mediante normas de urbanidad y respeto mutuo. *In re Andréu Rivas*, 81 D.P.R. 90, 121 (1959). *El ejercicio de su ministerio exige que mantengan la serenidad aun ante una provocación por parte de alguna persona irrespetuosa o altanera. In re Cruz Aponte*, 159 D.P.R. 170 (2003); *In re Hon. Maldonado Torres*, supra. Por supuesto, los magistrados y las magistradas no quedan desprovistos de mecanismos para vindicar la dignidad del foro judicial, ya que tienen a su alcance el desacato tanto civil como criminal. Es precisamente con relación a la autoridad de los jueces y las juezas para utilizar el mecanismo del desacato que trata la querella de marras.

### III

El desacato es un procedimiento sui géneris, que exige la inmediata intervención del juez o de la jueza y cuyo objetivo es vindicar la autoridad y dignidad del tribunal. *Pueblo v. Torres*, 56 D.P.R. 605, 623 (1939). Cónsono con el mencionado propósito, cualquier acto o conducta que tienda a impedir u obstruir la administración de la justicia por un tribunal o que menoscabe la autoridad o dignidad de éste será considerado desacato. S.P. Amadeo, *El poder de los tribunales en Puerto Rico para castigar por desacato*, Madrid, Ed. Rev. Der. Privado, 1961, pág. 5.

Los actos constitutivos de desacato pueden ser directos o indirectos. Se incurrirá en desacato directo cuando la acción u omisión lesiva a la adecuada administración de la justicia se cometa en presencia del tribunal, mientras que el desacato será indirecto cuando dicha acción u omi-

sión ocurra a distancia del tribunal y fuera de su inmediata presencia. *In re Cruz Aponte*, supra. A su vez, el desacato directo puede ser civil o criminal.[8]

El castigo en el desacato civil es de naturaleza coercitiva, mientras que en el desacato criminal es de carácter punitivo. La imposición de desacato civil persigue lograr el cumplimiento de una orden emitida por el tribunal. D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 4ta ed., San Juan, Inst. Desarrollo del Derecho, 1995, pág. 239. De otra parte, la conducta constitutiva de desacato criminal debe interrumpir los procedimientos llevados a cabo en el foro judicial y menoscabar el respeto debido al tribunal. Véanse: *In re Cruz Aponte*, supra; *Pueblo v. Lamberty*, 112 D.P.R. 79, 82 (1982); *Dubón v. Casanova*, 65 D.P.R. 835, 844–845 (1946).

Con relación al desacato criminal, que fue el impuesto en el caso que nos atañe, el Art. 235 del Código Penal, 33 L.P.R.A. sec. 4431, establece, en lo pertinente, que será culpable por el delito de desacato cualquier persona que:

> (a) Perturbare el orden, causare ruido o disturbio o se condujere en forma desdeñosa o insolente hacia un tribunal de justicia o un magistrado durante el desarrollo de una investigación judicial o una sesión tendiendo con ello directamente a interrumpir los procedimientos o menoscabar el respeto debido a su autoridad, o en presencia del jurado mientras esté en estrados o deliberando en alguna causa.

A la luz de las normas previamente expuestas, debemos

---

[8] Resulta preciso indicar que son múltiples las fuentes de la facultad para castigar por desacato. La Regla 40.9 de *Procedimiento Civil*, 32 L.P.R.A. Ap. III, reglamenta el desacato civil. De otra parte, el Art. 235 del Código Penal, 33 L.P.R.A. sec. 4431, y la Ley de Desacato, Ley de 1 de marzo de 1902, según enmendada, 33 L.P.R.A. secs. 517–518, tipifican la conducta que será considerada como desacato. La Regla 242 de *Procedimiento Criminal*, 34 L.P.R.A. Ap. II, establece el tipo de conducta clasificada como desacato criminal directo e indirecto. Además, en nuestro ordenamiento jurídico se reconoce el poder inherente de los tribunales para castigar por desacato. *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529, 535 (1989); *Pueblo v. García Rivera*, 103 D.P.R. 547, 551 (1975); *De Torre v. Corte*, 58 D.P.R. 515, 525 (1941).

determinar si el juez Velázquez Hernández abusó de su autoridad al hallar incurso en desacato al señor Fernández González.

IV

La prueba testifical que consta en autos revela que luego de finalizada la vista en la que el juez Velázquez Hernández verbalmente ordenó el archivo de la querella instada por el señor Fernández González, éste acudió a la ventanilla de la Sala de Investigaciones del Centro Judicial de Bayamón, donde fue atendido por la señora Quiñones Rodríguez.[9] De acuerdo con el testimonio de ésta:

> ... cuando él [señor Fernández González] sale de la sala, la persona va a donde mí, a la ventanilla y me pregunta, que él no está de acuerdo con lo que había determinado el Juez, con una resolución, porque, ¿sabe?, él entendía que lo que había determinado el Juez no era a favor de él, sino, en contra de él. Pues, yo le digo al caballero, que yo no tengo voz ni voto en esa resolución, simplemente yo soy una secretaria .... ¿Sabe?, él siguió alterado, de que ... con relación a que él no está de acuerdo con la resolución. De que él quería que el Juez determinara otra resolución. Yo le indico nuevamente, de que yo no puedo indicarle eso al Juez, ya que él estaba en sala actualmente. Yo vuelvo y le indico, de que él, cuando estaba en sala, porqué no se lo aclaró al Juez. Y él me indica, de que el Juez determinó una resolución, que no estaba de acuerdo. Se siguió alterando, alterando. Declaración jurada de la Sra. Suhaily Quiñones Rodríguez de 28 de marzo de 2001, Anejo 5, págs. 50–51.

La señora Quiñones Rodríguez continuó declarando que en aquel momento pasó el juez Velázquez Hernández quien, al escuchar las manifestaciones del señor Fernández González, ordenó que lo llevaran a sala. Una vez en sala, el señor Fernández González continuó alterado y no

---

[9] El juez Velázquez Hernández no ordenó el archivo mediante una resolución, sino que lo hizo constar en las notas del juez del expediente OPA-2000-815. Sobre este particular, es menester instar a los magistrados y las magistradas a ser muy cuidadosos en el trámite administrativo de los casos que ante ellos se ventilan.

permitió que el juez Velázquez Hernández le explicara los detalles de su caso. Conforme al testimonio del alguacil José Luis Rivera De Jesús, quien estuvo presente al momento en que el señor Fernández González fue encontrado incurso en desacato:

R. ... [e]l *Juez le estaba explicando los pormenores de ese caso y diciéndole qué es lo que sucedía y lo que él señalaba*, porque [sic] tenía él que restablecerle la luz a una muchacha, que él se la había cortado, [a] una inquilina de él. Y por unos acechos también, yo creo que en contra de la prima de la muchacha. *Y el Juez, pues, le estaba explicando lo que había. Y el señor, pues, se puso pico a pico con el Juez y el Juez le advirtió que mientras él hablaba, que se quedara callado. Que no hable mientras el Juez estuviera hablando.* Entonces, pues, el Juez continuó y el señor también continuó hablando. ...
P. ¿Además de continuar el señor hablando, de alguna otra manera interrumpió los procedimientos del Tribunal?
R. Bueno, en su movimiento. *Hacía un movimiento como que no quería oír lo que estaba diciendo el Juez.*

P. Ujú! ¿Y qué pasó?
R. *Y él siguió pico a pico y le alzó la voz al Juez. Yo creo que en dos o tres ocasiones. Y el Juez se lo advirtió como dos veces. Le indicó que le iba a dar un desacato. Y él siguió y el Juez, pues, le dio el desacato* y yo lo esposé y lo llevé a la celda. (Énfasis suplido.) Declaración jurada del Sr. José Luis Rivera De Jesús de 28 de marzo de 2001, Anejo 4, págs. 41–42.

Luego de analizar en su totalidad la prueba que consta en autos, debemos concluir que el señor Fernández González se condujo en forma desdeñosa e irrespetuosa hacia el tribunal. Ello en vista de su reacción airada, su alto tono de voz y su insistencia en hablar en lugar de escuchar la explicación que el juez Velázquez Hernández le estaba ofreciendo con relación al archivo de su querella. En conclusión, la conducta del señor Fernández González, en presencia del tribunal, constituyó un menosprecio a la autoridad del foro judicial. Ante tales circunstancias, los jueces y las juezas tienen discreción para utilizar el mecanismo del desacato, como ocurrió en el caso ante nos. El hecho de que el juez Velázquez Hernández hablara al mismo tiempo que

el señor Fernández González y lo exhortara a moderar su tono de voz, no implica que el magistrado haya actuado con severidad excesiva o agresividad. Tampoco surge de la prueba presentada que éste haya proferido palabras soeces o algún insulto al señor Fernández González. En síntesis, entendemos que la conducta del juez Velázquez Hernández no constituyó un trato desconsiderado hacia el señor Fernández González y que el magistrado tampoco ejerció su facultad para imponer desacato en aras de satisfacer un deseo personal; por ende, éste no contravino los Cánones I y XVI de Ética Judicial, *supra.*([10]) Ahora bien, *es menester reiterar que los miembros de la Judicatura no deben descender al nivel de su interlocutor al lidiar con personas irrespetuosas. "Todo juez debe mantener la calma siempre, incluso ante conducta inapropiada de los abogados, los testigos o las partes."* (Énfasis suplido.) *In re Cruz Aponte,* supra, pág. 188.

De otra parte, al ordenar el arresto del señor Fernández González por el delito de desacato, el juez Velázquez Hernández no levantó una minuta del incidente, sino que recopiló lo ocurrido en el formulario para las notas del juez. Tampoco emitió una orden de arresto. Sobre este particular, la Regla 242(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone:

---

([10]) El caso ante nos es distinguible de *In re Cruz Aponte,* 159 D.P.R. 170 (2003), donde suspendimos de empleo y sueldo a la querellada durante el tiempo que restara de su término por ordenar el arresto de una trabajadora social que la llamó solicitando un servicio. En dicho caso la conducta alegadamente constitutiva de desacato sumario fue por vía telefónica. Allí la ex jueza Nilda Cruz Aponte contestó la llamada de la trabajadora social en un tono airado y se condujo de forma irreflexiva hacia ésta y ordenó el arresto de la trabajadora social sumariamente sin proveerle una oportunidad de explicarse o de ofrecer una disculpa, demostrando, a su vez, que carecía de temperamento judicial.

Por el contrario, en el caso de autos, la conducta irrespetuosa del señor Fernández González ocurrió en presencia del tribunal. De la prueba se desprende que desde antes de entrar a sala ya éste estaba alterado al enterarse de que se había ordenado el archivo de su querella. El juez Velázquez Hernández intentó explicarle lo ocurrido con su querella al ordenar que pasara a sala, y aunque el magistrado estaba contrariado por la reiterada falta de respeto al tribunal, no hay evidencia que nos lleve a concluir que éste actuara de forma prejuiciada o irreflexiva.

El desacato criminal podrá castigarse en forma sumaria siempre que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se cometió en presencia del tribunal. La orden condenando por desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal.

El procedimiento sumario constituye una excepción a las garantías constitucionales, ya que en éste se antepone el interés de mantener el orden y la integridad del proceso judicial. *Pueblo v. Susoni*, 81 D.P.R. 124, 156 (1959). A la luz de la citada regla, la jueza o el juez sentenciador en la orden o mandamiento que impone el desacato, debe hacer constar los hechos constitutivos del delito y la pena impuesta.[11] Aunque dicha orden o mandamiento debe ser preparada, firmada y notificada al acusado sin dilación necesaria, hemos señalado que, por razones prácticas, ésta usualmente es redactada y firmada después que el juez o la jueza ha encontrado a la persona incursa en desacato. *Pueblo v. Santiago Lavandero*, 108 D.P.R. 647, 653–654 (1979). La consecuencia de incumplir el procedimiento establecido en la Regla 242(a) de Procedimiento Criminal, *supra*, es que la sentencia quedará enteramente nula y sin efecto.[12]

Como indicamos anteriormente, el juez Velázquez Hernández no emitió una orden de arresto o un mandamiento donde expusiera los hechos que dieron lugar a la sentencia impuesta al señor Fernández González por el delito de desacato, la cual fue reconsiderada y dejada sin efecto unos minutos más tarde. Únicamente hizo un escueto resumen del incidente en el formulario para las notas del juez. *Este proceder, aunque inadecuado por contravenir las garantías del debido proceso de ley de las que gozan los imputados de delito, constituye un error de derecho.* Conforme a la Regla 6 de Procedimiento para Ac-

---

[11] Véase, además, *Pérez Pascual v. Vega Rodríguez*, supra.

[12] Véase *Pueblo v. Tribunal Superior*, 92 D.P.R. 471, 476–477 (1965).

ciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces o Juezas del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico, 4 L.P.R.A. Ap. XV-A, "no será investigada aquella queja o solicitud de separación que: ... (b) pretenda intervenir impropiamente con determinaciones judiciales". El comentario al citado inciso (b) señala que *la comisión de un error de hecho o de derecho por un juez o una jueza en el desempeño de sus funciones judiciales no es causa para disciplinarlo.*[13] Véanse: *In re Hon. Díaz García, T.P.I.*, 158 D.P.R. 549 (2003); *Feliciano Rosado v. Matos, Jr.*, 110 D.P.R. 550 (1981).

■ A la luz de lo anterior, es forzoso concluir que la omisión de emitir una orden o mandamiento mediante el cual se ordenara el arresto del señor Fernández González y en la que se expusieran los hechos que dieron lugar a la sentencia por el delito de desacato, aunque no es la práctica más deseable, no es una actuación que deba ser penalizada a la luz de los Cánones de Ética Judicial, por tratarse de un error de derecho del juez Velázquez Hernández.[14] Además, tampoco encontramos en las actuaciones del magistrado falta de imparcialidad o una conducta intencional en abierto desafío a las normas estatutarias vigentes.[15] De otra parte, la conducta observada por el juez Velázquez Hernández no fue impropia ni incompatible con la función judicial. En conclusión, las actuaciones del juez Velázquez Hernández no constituyen una violación

---

[13] *R. Proc. por Salud Jueces T.P.I. y T.A.*, 131 D.P.R. 630, 644 (1992).

[14] Debemos puntualizar, no obstante, que "[l]a alta y honrosa prerrogativa de ordenar un arresto y restringir la libertad personal del ciudadano con que el Pueblo ha investido a la persona del juez, con exclusión de todo otro funcionario público por elevada que sea su jerarquía constitucional, jamás deberá usarse por el juez para propósito alguno que no sea el de la justicia que él está llamado a impartir". *In re Cruz Aponte*, supra; *In re Pérez Rodríguez*, 91 D.P.R. 219, 224 (1964).

[15] Por el contrario, el juez Velázquez Hernández, unos minutos más tarde de dictar la sentencia en corte abierta, reconsideró su dictamen y ordenó la excarcelación del señor Fernández González.

a los Cánones de Ética Judicial que ameriten la imposición de una medida disciplinaria en su contra.

## V

Por los fundamentos antes expuestos, *se exonera al Hon. Héctor Velázquez Hernández de los cargos presentados en su contra y se ordena el archivo de este asunto.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López no intervino.