CONVOCATORIA A UNA SESIÓN ESPECIAL DE LA CONFERENCIA JUDICIAL.

*Número:* ———  *Resuelto:* 14 de abril de 1988

## RESOLUCIÓN

Los señalamientos hechos por el Juez Presidente Señor Pons Núñez en sus expresiones públicas del pasado 12 de

abril de 1988 (véase anejo) por razón de la sustitución del Juez Superior Hon. Guillermo Arbona Lago por el Gobernador de Puerto Rico, Hon. Rafael Hernández Colón, plantean serios problemas que reflejan una situación que constituye motivo de profunda preocupación para este Tribunal.

La médula del planteamiento tiene que ver con el contenido real del concepto de independencia judicial dentro de nuestro esquema constitucional de separación de poderes.

Con el fin de tratar este tema en su más amplia dimensión el Tribunal convoca a una sesión especial de la Conferencia Judicial a llevarse a cabo el primer viernes de octubre de 1988. En dicha sesión especial se ha de tratar, entre otros, subtemas tales como autonomía presupuestaria, administración de sus recursos fiscales, evaluación de los jueces y criterios y mecanismos que deben imperar en la selección y renominación de jueces.

Los grupos de trabajo y agenda específica se han de designar y determinar por el Tribunal próximamente en coordinación con el Comité Directivo de la Conferencia Judicial.

Publíquese y notifíquese al Director Administrativo de los Tribunales, al Presidente del Comité Directivo de la Conferencia Judicial y al Secretariado Permanente de dicha Conferencia.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió voto particular.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

## ANEJO I

COMUNICADO DE PRENSA DEL JUEZ PRESIDENTE
VÍCTOR M. PONS NÚÑEZ
12 DE ABRIL DE 1988

Se me ha preguntado sobre mi posición en relación con la sustitución del Juez, Hon. Guillermo Arbona Lago, por parte del Gobernador de Puerto Rico, Hon. Rafael Hernández Colón. Respondo.

Aun cuando [soy] consciente de que constitucionalmente la facultad para nombrar jueces reside en el señor Gobernador de Puerto Rico, con el consejo y consentimiento del Senado, no puedo menos que expresar mi preocupación en relación con el ejercicio de esa discreción en este caso.

El Juez Arbona Lago es uno de nuestros jueces superiores más distinguidos, con un historial limpio y quien ocupa, por designación administrativa, y por encomienda del Tribunal Supremo, importantes cargos dentro del Sistema Judicial. Por designación administrativa es Juez Administrador Auxiliar de la Región Judicial de San Juan, Juez Administrador de los Asuntos Civiles en el Tribunal Superior de esa [r]egión y preside el comité a cargo de crear los estándares de tiempo para resolver los casos civiles. Por encomienda del Tribunal Supremo[,] actualmente ocupa la Presidencia del Comité de las Reglas de Procedimiento Civil de la Conferencia Judicial, cuyo [c]omité se encuentra actualmente laborando ardua y efectivamente en las encomiendas que se le han hecho.

En su quehacer diario los jueces tienen la obligación de decidir a favor de una parte u otra y como seres humanos, no somos infalibles. Lo importante es que se decida honestamente y con clara conciencia de la responsabilidad que se tiene. Una de las mayores responsabilidades que tiene la Rama Judicial es proteger los intereses particulares y sociales de los ciudadanos en contra de los errores y abusos de

poder de los organismos gubernamentales. En esa delicada labor es imprescindible que los jueces nos encontremos libres de toda presión o amenaza que pueda, consciente o inconscientemente, afectar el criterio recto que dicte nuestra conciencia.

En el caso particular del Juez Arbona, por su claro, limpio y distinguido historial, la falta de explicación para su sustitución [—]combinada con determinaciones judiciales suyas desfavorables a organismos gubernamentales[—] da lugar a la especulación prevaleciente de que su sustitución obedece a recomendaciones y juicios [fundados] en criterios ajenos a las más sanas normas democráticas susceptibles a ser interpretados como atentatorios contra la independencia de criterio judicial. La separación de poderes exige el buen uso del poder para fortalecer y dar contenido a las instituciones. Los malos usos sólo tienen el efecto de debilitarlos y ponerlos en entredicho.

Ante la conjunción de circunstancias que rodean este caso en particular, a mi juicio es menester que se divulguen oficialmente por el señor Gobernador las razones que han dado lugar a apartarse de la norma que debe prevalecer de que en casos como el del Juez Arbona[,] la renominación debe ser la regla. Otro proceder nos retrotraería a épocas pasadas, en distintas administraciones de gobierno, de triste recordación para la Rama Judicial y la democracia puertorriqueña.

—O—

Voto particular del Juez Asociado Señor Negrón García.

I

El pasado viernes 8 de abril de 1988, después de la *ceremonia* de juramentación de varios jueces para el Tribunal de Primera Instancia —cuyos términos vencerán en distintas

futuras fechas— el Juez Presidente Señor Pons Núñez notificó oficialmente a los miembros de este Foro la lista de renominaciones y nuevos nombramientos para la judicatura, según sometidas el 7 de abril por el Gobernador Hon. Rafael Hernández Colón para consejo y consentimiento al Senado de Puerto Rico. La misma causó desasosiego y consternación. Entre los jueces distinguidos a ser sustituidos está el Juez Superior Hon. Guillermo Arbona Lago cuyo término vencerá el 19 de mayo de 1988.

A raíz de la solemnidad de la ocasión, de inmediato recordamos que a "través de su extendida historia el Poder Judicial exhibe héroes y hasta mártires", L.M. Boffi Boggero, *Reflexiones sobre el Poder Judicial*, 1978-B Rev. Jur. Arg. La Ley 851 (1978). Sentimos una frustración de espíritu, de cómo paradójicamente "la lógica del sistema se quiebra, el valor implícito de la vida democrática se desmorona, las creencias se esfuman y se cumple aquello de que *'cuando se fue la justicia nos quedaron las ceremonias'*". (Énfasis suplido.) A. Mooney, *La elección del Poder Ejecutivo nacional: legalidad versus legitimidad*, 1985-E Rev. Jur. Arg. La Ley 545 (1985).

Hemos meditado profundamente las alternativas institucionales. "En la conjunción de todas las fuerzas inmanentes que forman la conciencia judicial, el juez es a veces un peregrino del Derecho que llega al templo para meditar con Dios en busca del criterio rector que dé plenitud a las más altas exigencias de su espíritu en la realización de la verdadera justicia, sin que lesione el fundo del ordenamiento jurídico."[1]

---

[1] Palabras del entonces Juez Presidente Luis Negrón Fernández en la sesión ceremonial de despedida ante el retiro del Juez Asociado Señor Emilio S. Belaval, recopiladas en 95 D.P.R. XXXV (1968).

## II

La percepción pública es que lamentablemente el Primer Ejecutivo ha sido mal informado y que su determinación responde a fuentes divergentes sobre los méritos del Juez Arbona Lago y al carácter absoluto del ejercicio de su facultad constitucional. El primer aspecto es crucial. Por naturaleza de las funciones judiciales, toda decisión se presta a ser defendida por el favorecido y rechazada por el litigante o abogado insatisfecho. Sin embargo, dentro de la natural discrepancia y confrontación de criterios, las fuentes de acceso subrepticias, incógnitas y directas al oído del Primer Ejecutivo conllevan el peligro de estar matizadas de revanchismo personal. "La experiencia indica que la maledicencia es un hábito pobre, de valor humano negativo y de inferior valor social que puede muchas veces alcanzar a personas de probada integridad contra quienes se desee echar a rodar, por la fantasía de las gentes muchas veces y otras por la maldad, inventivas como si fueran realidades, y falsías como si fueran verdades." *In re Jackson Sanabria*, 97 D.P.R. 1, 34 (1969), opinión disidente.

Sobre el segundo aspecto, según el diseño constitucional vigente, no cuestionamos la prerrogativa del Primer Ejecutivo en cuanto a la renominación de los jueces, compartida por el Senado de Puerto Rico. Reafirmamos nuestra deferencia hacia ambos poderes. Pero el ejercicio *discrecional* de esa prerrogativa, aun cuando de su faz es absoluto, no puede significar que sea arbitrario. "[E]l concepto discreción, aun con referencia a una potestad de abolengo constitucional que no está específicamente reglada, necesariamente ha de nutrirse de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. Como fuente integral del proceso de decisión que contribuye a dar sentido a la ley y a concretar en la realidad derechos indivi-

duales y colectivos, el uso por excelencia de un poder discrecional, intenta establecer un balance moral entre los polos opuestos en que se debaten algunas de las controversias humanas: el bien y el mal; la juridicidad y la violencia; la legalidad aparente y la ventaja indebida; lo prudente y lo irrazonable; la paridad y la desigualdad; lo espiritual y lo material; lo racional y lo pasional; y, la opresión y la libertad." *Santa Aponte* v. *Srio. del Senado*, 105 D.P.R. 750, 770 (1977), opinión concurrente.

Resulta un rezago jurídico que inexplicablemente el Poder Ejecutivo niegue consecuencias a, y anule la eficiencia e independencia del sistema de administrar justicia, *apartándose del precepto de ley no escrita y tradicional, de avalar con sus renominaciones*, jueces íntegros, competentes y de prístina solvencia moral y ética, por la sola razón de que la Constitución no fijó expresamente unos criterios para que el ejercicio de esa facultad ejecutiva pudiera manifestarse. Ciertamente el derecho a nombrar y renominar los jueces no debe hacerse depender del grado de eficiencia con que se redacte una constitución. Conocido el espíritu y objetivo de independencia judicial que inspiró nuestra Ley Fundamental, los tres poderes constitucionales debemos hacer causa común y realidad su propósito fundamental, evitar nocivos precedentes que no sólo resultan arcaicos en nuestro tiempo, sino atentatorios al estado actual de nuestra conciencia generacional.

## III

La importancia de la determinación ejecutiva rebasa el momentáneo despliegue y auge noticioso que públicamente el asunto ha generado. En lo que concierne a este Tribunal, sin una acción afirmativa, el mismo quedará rápidamente postergado en orden a los otros conflictos que en el mañana se debatirán en nuestra sociedad contemporánea. Como uno de los tres ex jueces del tribunal de instancia que integramos

este Foro, conocemos los efectos perniciosos que a largo plazo conlleva sobre la estabilidad, el respeto a sí mismo, la libertad de conciencia y voluntad de ser justo de la judicatura del país. Sabemos que el sentimiento de orfandad se extiende a la presente y futura generación de jueces.

Estas reflexiones y preocupaciones no son privativas. Con palabras distintas han sido expuestas con anterioridad por el Juez Presidente Señor Pons Núñez, el Presidente del Colegio de Abogados, Lic. Héctor Lugo Bougal, y el Hon. Juez Superior Eduardo Álvarez De la Vega, Presidente de la Asociación Puertorriqueña de la Judicatura. El Juez Arbona Lago goza de un excelente y nítido historial como jurista. Con espíritu vertical ético ha desempeñado su cargo y por imperativo, intervenido en casos controversiales. Véase *Pueblo Int'l, Inc.* v. *Srio. de Justicia,* 117 D.P.R. 230, 244 (1986), voto particular individual del Juez Asociado Señor Rebollo López. Ante estas credenciales, como cuestión de realidad, la inescrutable explicación brindada por el Hon. Gobernador Rafael Hernández Colón, unida a la del Presidente del Senado, Hon. Miguel Hernández Agosto —atribuye su objeción a la nominación a un dictamen desfavorable al Estado en una causa judicial— razonablemente tienden a indicar que la acción ejecutiva responde exclusivamente a móviles exógenos que trascienden los méritos personales y profesionales de dicho magistrado. De lo especulativo nos aproximamos a la verdad. Al hacernos eco del sentir del Juez Presidente Señor Pons Núñez, aparentemente "su sustitución obedece a recomendaciones y juicios [fundados] en criterios ajenos a las más sanas normas democráticas susceptibles a ser interpretados como atentatorios contra la independencia de criterio judicial. La separación de poderes exige el buen uso del poder para fortalecer y dar contenido a las instituciones. Los malos usos sólo tienen el efecto de debilitarlos y ponerlos en entredicho". Anejo I, pág. 841.

Resquebrajada y desvalorizada la norma tradicional de renominación aludida —e inmolada la persona del Juez Arbona Lago— incumbe a este Foro rescatar y devolver al resto de la magistratura puertorriqueña el sentido de seguridad y confianza de que subsiste la garantía e independencia judicial —libre de servilismo o condicionalismo— en su proyección tridimensional: legal, funcional y orgánica. En esa misión, con carácter urgente, ha sido menester replantearnos las fallas existentes en el proceso de renominación según plasmadas en el informe del Secretariado de la Conferencia Judicial, *La Judicatura*, San Juan, octubre de 1981, pág. 73, con miras a superarlas, en particular, aquélla de que lo "único que está claro es que el juez depende exclusivamente *del favor del Primer Ejecutivo y está a merced de las fuerzas políticas* que puedan ayudar a mover la discreción de éste". (Énfasis suplido.) La cuestión también ha requerido una convocatoria especial de la Conferencia Judicial para cubrir otros extremos germanos.

La Resolución adoptada hoy recoge el sentir unánime institucional y representa —irrespectivo del desenlace del proceso de sustitución a que ha sido sometido el Juez Arbona Lago— un paso más que abona a "la independencia del Poder Judicial como factor de equilibrio en la estructura gubernamental de nuestro sistema de vida democrática". Canon XIII de Ética Judicial, 4 L.P.R.A. Ap. IV-A.