EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Zaida Hernández Torres | 2006 TSPR 81 167 DPR _____ |

Número del Caso: AD-2001-3

Fecha: 11 de mayo de 2006

Oficina de Administración de los Tribunales:

Lcda. Nilsa Luz García Cabrera
Lcda. Ivonne Díaz Pérez
Lcdo. Nelson Javier Canabal Pérez

Lcda. Milagros Rivera Guadarrama
Directora
Oficina de Asuntos Legales

Abogada de la Parte Querellada:

Lcda. María Elena Vázquez Graziani

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Zaida Hernández Torres

AD-2001-3

PER CURIAM

San Juan, Puerto Rico, a 11 de mayo de 2006

La Hon. Zaida Hernández Torres funge como Juez del Tribunal de Apelaciones desde el 17 de marzo de 1998.

Ante unas expresiones públicas, alegadamente de índole político partidista, hechas por la Juez Hernández Torres y publicadas en distintos medios de comunicación, la entonces Directora Administrativa de los Tribunales, Lcda. Mercedes M. Bauermeister, refirió una solicitud de investigación a la Oficina de Asuntos Legales de la Administración de Tribunales para que ésta hiciera una investigación y rindiera un informe.

Rendido el mismo, el 26 de enero de 2001, la Oficina de la Administración de Tribunales, en

adelante OAT, remitió dicho informe, en conjunto con toda la prueba documental, a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, en adelante, la Comisión, en torno a la conducta de la Juez Hernández Torres.

En el referido informe la OAT le imputó a la Juez Hernández Torres haber hecho manifestaciones, alegadamente político partidistas, durante el período de la celebración del juicio sobre el "fraude en el Instituto del SIDA". Las expresiones de prensa fueron reseñadas en 21 artículos periodísticos, los cuales fueron anejados al informe, y fueron dividas por la OAT en 5 grupos. A saber:

1. expresiones sobre el testimonio del Sr. Ángel Corcino Mauras en el mencionado juicio;

2. expresiones luego de ser citada por los abogados de defensa del Dr. Yamil Kouri;

3. expresiones sobre el contenido de su testimonio en el Tribunal Federal antes de entrevistarse con la fiscalía federal;

4. expresiones luego de ser citada por la fiscalía federal como testigo de cargo; en especial, aquellas en torno a la investigación realizada por la Cámara de Representantes y sobre el ex-Presidente de dicho cuerpo, Edison Misla Aldarondo y la ex-representante, Sra. Myrna Passalacqua y;

5. **expresiones contenidas en la entrevista concedida por la Jueza Hernández Torres en su oficina del Tribunal de Circuito de Apelaciones a la Sra. Magdalys Rodríguez, reportera de El Nuevo Día; en particular sobre la investigación antes mencionada y sobre la labor de la Legislatura de Puerto Rico.**

Dichas expresiones, según la OAT, eran violatorias de los Cánones I, V, y XIII de Ética Judicial, 4 L.P.R.A. Ap.

IV-A. La Comisión designó como Comisionada a la Lcda. Enid Martínez Moya para que examinara el referido informe y determinara si existía causa para iniciar un procedimiento disciplinario contra la Juez Hernández Torres por las expresiones vertidas en los 21 artículos periodísticos. En su informe, la Comisionada expresó que luego de un estudio detenido del Canon XIII y la jurisprudencia sobre el mismo entendía que no existían criterios específicos para determinar cuándo las manifestaciones de un juez eran de tipo político partidista. En ausencia de una interpretación clara del referido Canon, la Comisionada adoptó su propio criterio: en esencia, que las expresiones de un juez son político partidistas si éstas "delatan su preferencia política en términos de partido político o de ideología política; si las expresiones pueden entenderse que sirven de apoyo o que adelantan de alguna manera el programa o las propuestas de alguna ideología política o de algún partido político".

A la luz de este criterio, la Comisionada encontró causa para iniciar el correspondiente procedimiento disciplinario únicamente en cuanto a uno de los incidentes, reseñado en uno de los 21 artículos de periódico, el cual corresponde al Anejo 21 del Informe de la OAT. Determinó la Comisionada que en ese momento la Juez pasó juicio sobre la Rama Legislativa y la productividad de sus miembros a quienes acusó de dar más importancia a los "discursos de barricada" que al trabajo de comisión. En específico, la

Juez Hernández Torres <u>criticó la política prevaleciente en la Cámara de asignarles igual cantidad de recursos a todos los legisladores</u>. <u>La mencionada Juez expresó, además, que la minoría --en ese momento compuesta por miembros del Partido Popular Democrático y el Partido Independentista Puertorriqueño-- no estaba cumpliendo adecuadamente su función, a diferencia de la forma en que ella y Edison Misla Aldarondo lo habían hecho cuando eran minoría</u>. De otra parte, la Juez también criticó, caracterizando como inefectiva, la legislación del Legislador a Tiempo Completo.

Estas expresiones de la Juez, según el informe de la Comisionada, eran violatorias de los Cánones I y XIII (f) e (i) de Ética Judicial al atacar públicamente a líderes políticos, incursionar en el ámbito legislativo y lesionar la imagen de la independencia de la Rama Judicial. En virtud del referido informe, la Comisión requirió de la Oficina de Asuntos Legales de la OAT presentar la querella correspondiente. No se encontró causa respecto a los demás artículos ni se recomendó la imposición de medidas disciplinarias provisionales.

En cumplimiento con lo ordenado, el 19 de junio de 2001, la Oficina de Asuntos Legales de la OAT presentó ante la Comisión una querella contra la Hon. Zaida Hernández Torres imputándole tres cargos por violaciones a los Cánones I, V y XIII, Incisos (f) e (i), del Código de Ética

Judicial.[1] La OAT, aun cuando la Comisionada había descartado los mismos, formuló cargos por violación al

---

[1] Los cargos imputados, en síntesis y en lo pertinente, son los siguientes:

Primer Cargo:

La Hon. Zaida Hernández Torres incurrió en conducta impropia incompatible con su cargo de Jueza consistente en que hizo expresiones públicas en una entrevista con *El Nuevo Día* el 30 de enero de 2000, criticando a la Rama Legislativa. La crítica a los legisladores hecha por la Hon. Zaida Hernández incursiona en el ámbito legislativo. Dicha intromisión lesiona la imagen de independencia de la Rama Judicial contenida en el Canon I de los Cánones de Ética Judicial el cual obliga a todo Juez o Jueza a velar que en el ejercicio de la delicada función de impartir justicia, sus actuaciones respondan a las normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la judicatura.

Segundo Cargo:

En particular, la Jueza Hernández Torres criticó la política de la Cámara de Representantes de asignar igual cantidad de fondos a todos los legisladores, alegadamente marginando con ello a varios legisladores talentosos. La Jueza clasificó el trabajo de la Rama Legislativa como uno de pobre productividad, en donde se le daba más importancia a los "discursos de barricada". De igual manera, la Jueza criticó el trabajo de fiscalización de las minorías parlamentarias de los otros partidos políticos.

Por último, la Jueza Hernández Torres criticó la aprobación de la Ley sobre el Legislador a Tiempo Completo, la que catalogó de inefectiva y de haber sido aprobada para "aparentar".

La conducta antes transcrita viola las disposiciones del Canon XIII incisos (f) y (i) de los Cánones de Ética Judicial los cuales reglamentan las actividades políticas que les están vedadas a los Jueces y Juezas con el fin de proteger y promover la independencia de la Rama Judicial de las otras Ramas de Gobierno mediante el equilibrio en la estructura gubernamental de nuestro sistema de vida democrática.

(Continúa . . .)

Canon V y a la Circular Numero 3 de 22 de agosto de 1994,

Año Fiscal 1994-1995 denominada *Criterios para Orientar el*

*Ejercicio del Derecho a la Expresión Judicial*, porque

alegadamente la Juez Hernández Torres no había solicitado

autorización al Juez Presidente o a la Directora de la

Administración de Tribunales para participar en las

referidas entrevistas. Cabe señalar, repetimos, que en el

Informe de Determinación de Causa, la Comisionada entendió

que la Juez Hernández Torres no había violado el Canon V,

ni la Circular Número 3 de 22 de agosto de 1994.[2]

---

Tercer Cargo:

La Hon. Zaida Hernández Torres incumplió con sus deberes y obligaciones administrativas impuestas por leyes, reglamentos e instrucciones de la Administración de los Tribunales sobre el ejercicio del derecho a la expresión judicial, al no solicitar autorización al Juez Presidente a través de la Directora Administrativa de los Tribunales sobre su intención de participar en entrevistas o cualquier actividad informativa.

Esa conducta es contraria al Canon V de los Cánones de Ética Judicial de Puerto Rico, el cual obliga a todo Juez o Jueza a cumplir cuidadosa y diligentemente las obligaciones administrativas que le imponen las leyes y reglamentos aplicables a la Rama Judicial y las instrucciones de la Oficina de Administración de los Tribunales.

En dicho contexto, la conducta de la Jueza Hernández Torres viola lo dispuesto en la Circular Numero 3 de 22 de agosto de 1994, Año Fiscal 1994-1995 denominada *Criterios para Orientar el Ejercicio del Derecho a la Expresión Judicial*.

[2] Esta última fue formulada por el entonces Juez Presidente del Tribunal Supremo para establecer unas guías para los jueces que quisieran expresarse en torno a las enmiendas constitucionales que serían objeto del referéndum de 1994.

En su contestación a la querella presentada en su contra, la Juez Hernández Torres negó que su conducta fuera violatoria de los Cánones imputados. Al fundamentar su posición, relató varios incidentes reseñados por la prensa en que distintos jueces han hecho expresiones que alegadamente podrían ser calificadas como violatorias de los Cánones de Ética Judicial. Alegó, además, que el Canon XIII no ofrecía criterios ni guías específicas mediante las cuales un juez pudiera saber con certeza qué tipo de expresión pudiera ser violatoria del mismo; razón por la cual, según la querellada, los jueces no tenían criterios fijos para decidir qué era correcto y qué no. Indicó además, que en la jurisprudencia de este Tribunal tampoco había una interpretación clara del referido Canon XIII.

En particular, y en lo referente al anuncio periodístico por el cual se le radicó la querella, la Juez Hernández Torres alegó que no había criticado a uno o varios políticos en específico, sino que había hecho expresiones generales y vagas en torno a la productividad de la mayoría de los componentes de la Cámara. Sobre su comentario en cuanto a la igual distribución de recursos a todos los legisladores, la Juez Hernández Torres alegó que éste no cumplía con los criterios establecidos por la Comisión al: (1) no delatar su preferencia política en términos de partidos políticos y; (2) al no apoyar o adelantar los programas de algún partido o ideología política. Idénticos fundamentos utilizó para sostener que

su comentario sobre la minoría legislativa no violaba el Canon XIII.

De igual forma, la Juez Hernández Torres sostuvo que las expresiones vertidas en el artículo periodístico tampoco eran violatorias del Canon I, ya que ésta no había atacado a la Legislatura, sino que meramente le había hecho una "crítica" cándida y de buena fe.

Por último, y en cuanto a los comentarios sobre la situación del Legislador a Tiempo Completo, la Juez Hernández Torres expresó que, si alguna controversia sobre la misma llegara ante su consideración, ella siempre tendría la alternativa de inhibirse y abstenerse de resolver sobre ese asunto. Además, señaló que el opinar sobre las deficiencias de una legislación y ofrecer modificaciones a la misma no era algo vedado a los jueces.

La querellada, además, solicitó que la Comisión desestimara los cargos presentados contra ésta en torno a violaciones a la Circular Núm. 3 de 22 de agosto de 1994, y el Canon V, por cuanto los mismos ya habían sido desestimados en el informe de la Comisionada y la OAT no había solicitado la reconsideración de dicha determinación, por lo cual estaba impedida de presentarlos.

Por su parte, la OAT se opuso a que dichos cargos fuesen desestimados y reafirmó que la conducta de la querellada violaba tanto el Canon V, que obligaba a todo juez o jueza a cumplir las obligaciones administrativas que

imponen las leyes y reglamentos aplicables a la Rama Judicial y la Circular Núm. 3.

Mediante resolución a esos efectos, la Comisión determinó que únicamente se había encontrado causa en cuanto a las expresiones vertidas en el artículo periodístico que correspondía al Anejo 21 del informe de la OAT y que todos los demás cargos habían sido desestimados[3]. Posteriormente, el 31 de julio de 2001, la Comisión concedió plazo a las partes para efectuar el descubrimiento de prueba que entendieran fuese necesario. Presentado el Informe de Conferencia entre las Partes, la OAT anunció como testigo de cargo durante la vista a la Juez querellada. La representación legal de la querellada se opuso a dicha citación y fundamentó su oposición en la Regla 29 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones, 131 D.P.R. 630 (1992). Mediante resolución a esos efectos, la Comisión denegó la petición de la OAT de traer como testigo a la Juez Hernández Torres. Inconforme, la OAT compareció a este Tribunal en revisión de la anterior determinación. Mediante Opinión *Per Curiam* emitida el 15 de marzo de 2005, confirmamos la determinación de la Comisión.

---

[3] La referida determinación --en cuanto a que el tercer cargo se había desestimado-- quedó reafirmada en una resolución posterior emitida por la Comisión el 3 de abril de 2002.

Así las cosas, y culminada la vista evidenciaria en donde tanto la parte querellante como la querellada presentaron prueba testifical y documental, quedó admitido en evidencia, entre otros documentos, el antes mencionado artículo periodístico que contenía la entrevista realizada a la querellada.

I

Los hechos incontrovertidos, según surge del informe preparado por la Comisión son los siguientes: el 25 de enero de 2000, la Juez Hernández Torres concedió una entrevista en su oficina en el Tribunal de Apelaciones a la periodista Magdalys Rodríguez del periódico El Nuevo Día. El referido periódico publicó dos artículos sobre la entrevista titulados "La testigo estrella" y "Ve caída legislativa". El informe de la Comisión resume este último artículo de la siguiente forma:

> El artículo "Ve caída legislativa" trató en específico sobre aspectos relacionados con la Asamblea Legislativa. En el mismo la Juez Hernández Torres mencionó que ha bajado mucho la calidad del trabajo en la Legislatura, y que la productividad no podía medirse a base de los proyectos presentados sino a base de la asistencia a las comisiones. A su entender el verdadero trabajo se lleva a cabo en las comisiones y no brindando un "discurso de barricada" en el hemiciclo; veía pocos legisladores comprometidos con el trabajo en de las comisiones. Según la Juez Hernández Torres era un error brindar la misma cantidad de recursos a todos los legisladores ya que esto ocasionaba que la Legislatura fuera menos activa. Consideraba que la fiscalización de las minorías parlamentarias había disminuido en comparación al trabajo realizado por la Juez Hernández Torres y sus compañeros cuando ésta

formaba parte de la minoría. En cuanto a la ley del Legislador a Tiempo Completo, opinaba que no era un mecanismo efectivo ya que no se logró que tuviera realmente el efecto de un legislador a tiempo completo. La legislación no tuvo el efecto de limitar las fuentes de ingresos de todos los legisladores sino sólo de un grupo, por ejemplo, a los profesionales.[4] (Énfasis suplido).

---

[4] A continuación, algunas de las expresiones vertidas por la Juez Hernández Torres en la referida entrevista:

**¿Qué le parece la productividad?**

- "Sabes, la productividad no puede medirse a base de los proyectos que se radican. La productividad, siempre he dicho, se tiene que medir a base de tu asistencia a las comisiones. El verdadero trabajo importante se hace en las comisiones. No es en el hemiciclo dando un discurso de barricada. Es en las comisiones haciendo preguntas correctas para enmendar legislación, para asumir posición en torno a esa legislación, para cuando vayas al hemiciclo puedas tener no un discurso de barricada, sino de contenido de ese proyecto. Y yo veo que hay muy poco legislador comprometido con ese trabajo de comisión. Siempre veo los mismos, los mismos, que trabajan y ahora, veo con tristeza y me pregunto: ¿por qué se va Néstor Aponte?, ¿por qué se va Leo Díaz?, ¿por qué se fue Pedro Figueroa?, ¿por qué veo apagado a Aníbal Vega Borges?, ¿por qué no escucho mucho a otros legisladores que antes se escuchaban, como Ángel Cintrón?"

**¿Podría ser por razones ajenas al proceso político, podría ser porque están cansados de la política?**

- "Creo que no. Conmigo trabajaron mucho y nunca se quejaron de cansancio. Al contrario, por que cuando yo le daba encomiendas a cualquiera de ellos, a Toñito Silva, a Rolan Maldonado, yo sentía que ellos agradecían que yo les diera la oportunidad de representarme y siempre me trajeron buenos comentarios de la representación. Depende de cómo tú manejes los talentos que tienes allí. Si tú marginas los talentos o no les das los recursos, por alegadamente darle los recursos iguales a todos, lo cual es un error, vas a tener una Legislatura menos activa."

**¿Qué le parece la fiscalización de las minorías?**

- "Bahh. Como fui minoría y me lo disfruté. (Medita unos segundos). No sé, no los entiendo (risas)."

(Continúa . . .)

- "Las delegaciones del Partido Popular y del Partido Independentista se justifican diciendo que ahora hay más oficinas del Gobierno encargadas de la fiscalización. Se quejan de que la mayoría no les aprueba sus peticiones de investigación."

- "Yo no recuerdo que a mí me hayan aprobado una sola resolución de investigación cuando yo era minoría. Y eso no era óbice para que yo hiciera mis investigaciones e hiciera mis denuncias y las pudiera probar, por supuesto. Allá cada cual con su conciencia, pero se planteaba el *issue*. Y eso a la larga hace efecto por que tapar tanta cosa, por que no darle paso a unas cosas. Y entonces cuando llega el otro partido hace lo mismo, más que por razón, por la emoción. Creo un poco, creo que eso se ha desacreditado. Pero no veo una fiscalización como la había cuando yo era minoría. Jamás. Tanto cuando era portavoz José Granados como cuando era portavoz Edison Misla cada uno de nosotros teníamos unas funciones que escogíamos para fiscalizar. Tú sabes que fuimos a los Tribunales por el presupuesto, por la Oficina de Puerto Rico en New York, se sentaron casos, que ahora son precedentes."

**¿Qué usted opina sobre la legislación del Legislador a Tiempo Completo?**

- "Yo defendí la legislación, pero no creo que la pieza legislativa que se consiguió realmente tenga los efectos de un legislador a tiempo completo y creo que hasta ha desalentado a algunos buenos. El que quiere seguir violando la ley la sigue violando y a mí nunca me ha gustado aprobar leyes por aparentar. No creo que fue un mecanismo efectivo."

**¿Por qué es flexible o es rígida?**

- "En cierto aspecto parece ser rígida, pero es flexible. La prohibición de generar ingresos de otras fuentes, tal y como está, a quien limita es a los profesionales, pero no al que tenga un negocio; particularmente limita a los abogados, a los médicos. Pero si tienes un negocio, con el solo hecho de ponerlo en un fideicomiso, pasarlo a nombre de un pariente, pues, tan sencillo como eso. Limita a un grupo, no a todos. Así que unos la pueden burlar y otros no. Es una inequidad." (Énfasis nuestro).

-

Sobre el contenido de la entrevista no hay controversia. La Juez Hernández Torres no levantó tampoco alguna objeción en cuanto a su admisibilidad.

Analizado el referido artículo, la Comisión expresó que los Cánones de Ética Judicial contenían unas guías mínimas de conducta que debían ser observadas por los jueces y que contenían numerosas limitaciones a las expresiones que podían hacer los jueces y juezas. Dichas limitaciones, según la Comisión, tenían su fundamento en el mismo poder que tiene este Tribunal para aprobar los referidos Cánones y que se derivaban además de la Sección 12 del Artículo V de la Constitución del E.L.A.

En cuanto a las limitaciones a la libertad de expresión de los jueces sobre asuntos de naturaleza político-partidista, la Comisión determinó que, según *In re Solicitud Cepeda García*, 130 D.P.R. 18 (1992), las expresiones de un juez podrían en ocasiones adquirir matices políticos y aun así no necesariamente convertirse en conducta contraria a los Cánones de Ética Judicial.

Sobre el asunto específico de las manifestaciones de la Juez Hernández Torres, la Comisión determinó que las expresiones contenidas en la entrevista "La testigo estrella" y "Ve caída legislativa" estaban dirigidas a comentar una situación en la cual la querellada fue partícipe y tuvo conocimiento mientras fungía como Presidenta de la Cámara de Representantes (la investigación del llamado caso del "Instituto del Sida"). La Comisión

expresó que fue dentro de este contexto que la querellada pasó juicio sobre la productividad legislativa, criticó determinadas políticas seguidas por esa Rama, y criticó el rol asumido por las minorías parlamentarias. Añadió la Comisión que dentro de la entrevista, la Juez también se había expresado sobre su experiencia como juez sus sentimientos personales sobre si regresaría o no a la política, su estado de salud y su opinión sobre la llamada Ley del Legislador a Tiempo Completo.

La Comisión expresó que la Juez Hernández Torres, aunque debió conocer lo delicado de la situación a la que se exponía, no violó ni el Canon I, ni el Canon XIII de Ética Judicial, ante. Determinó, que las expresiones realizadas en la entrevista aunque fueron "de carácter personal, y en ocasiones anecdóticas, están revestidas de algún interés público aunque no involucran ni atañen de forma directa a la Rama Judicial ni al ministerio que hoy ejerce la [q]uerellada". Expresó además la Comisión que estas expresiones más bien podían adquirir "matices políticos" y que, a lo sumo, reflejaron "gran insensatez".

En fin, la Comisión concluyó, que tales expresiones, analizadas en el conjunto de la entrevista publicada no eran aquellas de carácter político partidista que el Canon XIII prohibía, ni podía considerarse que éstas buscaron o entablaron una polémica con la Rama Legislativa, razón por la cual no encontró violación ética alguna.

II

Los Cánones de Ética Judicial que venían rigiendo desde el 1977 fueron recientemente enmendados y sustituidos por los nuevos Cánones aprobados por este Tribunal mediante Resolución de 5 de abril de 2005. Los referidos Cánones entraron en vigor el 5 de octubre de este mismo año. *In re Aprobación de Cánones de Ética Judicial de 2005*, res. 5 de abril de 2005, 2005 T.S.P.R. 39. Sin embargo, los hechos del presente caso ocurrieron antes de dicha enmienda, por lo cual nuestra discusión se basa en los Cánones de 1977.

Según el Canon I de este cuerpo de normas, los miembros de la Rama Judicial, en el ejercicio de su delicada función, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura.

La referida disposición, como precepto general, establece la importancia de que con su conducta los jueces y juezas ayuden a mantener la fe del pueblo en la justicia a través de su integridad e imparcialidad. Rafael J. Torres Torres, *Cánones de Ética Judicial de Puerto Rico, Comentarios*, FORUM 1-4, octubre 1993, pág. 7; *In re Velázquez Hernández*, res. el 23 de junio de 2004, 2004 TSPR 107.

La confianza de una sociedad en su sistema de justicia depende en buena medida de la confianza que se tenga en los hombres que tienen la responsabilidad de impartirla y, por

otro lado, del buen funcionamiento del sistema, es decir, de la eficiencia con que esas personas desempeñan la función judicial. Secretariado de la Conferencia Judicial, La Judicatura Puertorriqueña, octubre de 1981, pág. 147.[5]

En aras de proteger el principio de mantener la confianza de la ciudadanía en su sistema de justicia, los Cánones de Ética Judicial establecen unas normas mínimas que rigen la conducta de los jueces. Éstas son "las obligaciones más elementales que deben cumplir los encargados de ejecutar nuestro sistema de justicia". *In re* Hon. Ferrán Quintana, ante. Dichas normas son aplicables tanto en el ejercicio de sus funciones judiciales como en sus vidas privadas. Véase: *In re* González Acevedo. "Su aplicación en la vida de los jueces y juezas, tanto en sus actuaciones que tienen trascendencia pública como en los asuntos propios del ámbito personal y familiar no es arbitraria. Es, más bien, autoimpuesta, pues su aceptación como marco normativo es consustancial al consentimiento que cada Juez y Jueza ha prestado al aceptar el cargo". *Ibid*. (Énfasis nuestro).

Las limitaciones que los Cánones de Ética Judicial imponen a la conducta de los jueces son consustanciales con el poder que tiene este Tribunal de reglamentarla. Este poder emana de La Ley de la Judicatura del 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24 *et seq.*, la

---

[5] Citado en *In re* Hon. Ferrán Quintana, res. el 28 de junio de 2002, 2002 T.S.P.R. 93.

cual establece, entre otras cosas, la obligación de este Tribunal de adoptar e implantar Cánones de Ética Judicial que rijan la conducta de los Jueces y Juezas de Puerto Rico. Se dispone, además, que los Cánones adoptados "deberán reflejar las expectativas de la sociedad respecto a la judicatura, establecer la relación fiduciaria que debe existir entre el juez y la comunidad y servir de base para la selección y nombramiento de los mejores candidatos". 4 L.P.R.A. sec. 24(d). Así, los referidos Cánones contienen restricciones que, por la naturaleza de su ministerio debe imponerse el juez tanto en su conducta judicial, como extrajudicial.[6] Al asumir el cargo éste acepta, también,

---

[6] A modo de ejemplo: deber de respeto y de abstenerse de hacer críticas infundadas o innecesarias que tiendan a desprestigiar a sus compañeros jueces; abstenerse de hacer recomendaciones sobre abogados o abogadas específicos a utilizarse con respecto a controversias entre ciudadanos; excluir de su conducta toda apariencia de que es susceptible a actuar a base de influencia de personas, grupos o partidos, el clamor público, consideraciones de popularidad o notoriedad, o por motivaciones impropias; abstenerse de unirse en solidaridad con cualquiera de las partes en un procedimiento; no celebrar entrevistas privadas con las partes o sus abogadas o abogados; tratar con consideración y respeto a los abogados y a las abogadas, a testigos, jurados, funcionarias o funcionarios del tribunal y a toda persona que comparezca ante el tribunal; mantener su conducta dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas.

Tampoco hacer comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa. Comportarse públicamente de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales no deshonren el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales; no hacer

(Continúa . . .)

ciertas restricciones a su conducta, tanto en el ejercicio de sus funciones propiamente judiciales, como en sus demás actividades, ya sean personales o profesionales. Estas limitaciones, si bien no les privan de los derechos que poseen como miembros de nuestra sociedad, representan sacrificios en su vida pública y privada que enaltecen la integridad e independencia de su ministerio y estimulan el respeto y la confianza en la judicatura. *Ibid*.

III

No hay duda entonces que al aceptar su cargo, el juez renuncia a ciertas libertades, en especial, en el ámbito de la libertad de expresión y de asociación. En lo pertinente al presente caso, el Canon XIII de Ética Judicial, ante[7], disponía, que:

---

declaraciones públicas sobre asuntos que estén sometidos ante su consideración, ni explicar la razón de sus actuaciones. Cánones IV, IX, XI, XIV, XV, XVI, XVII, XXIV, y XXV de los Cánones de Ética de 1977; Cánones V, VI, VIII, XI, XII, XIII, XIV, XXIII, y XIX de los Cánones de Ética de 2005.

[7] Este Canon fue sustituido por el Canon XXVIII de los nuevos Cánones de Ética Judicial de 2005. Este último dispone, en lo pertinente, que:

> Las juezas y los jueces se abstendrán de participar en el proceso político, sin menoscabo de su derecho al sufragio, a sus propias ideas sobre cuestiones políticas y a los deberes y funciones que les asignan las leyes y los reglamentos electorales. Sin que la siguiente enumeración excluya otras actividades, que por su carácter político le están vedadas, las juezas y los jueces no podrán:

(Continúa . . .)

Los Jueces y las Juezas deben proteger la independencia del poder judicial como factor de equilibrio en la estructura gubernamental de nuestro sistema de vida democrática. A tal fin, el Juez o la Jueza debe abstenerse de participar en el proceso político, sin menoscabo, desde luego, de su derecho al sufragio, a sus propias ideas sobre cuestiones políticas, y a los deberes y funciones que le fijan las leyes y reglamentos electorales.

Sin que la siguiente enumeración excluya otras actividades que por su carácter político le están vedadas, el Juez o la Jueza no debe:

…

(f) Hacer expresiones, comentarios o manifestaciones públicas sobre asuntos o actos de naturaleza político partidista.

…

(i) Atacar públicamente o entablar polémicas con candidatos o candidatas o líderes políticos, sin menoscabo, desde luego, de su derecho a defenderse de ataques abusivos a su persona o a su honra.

…

El Juez o la Jueza debe estar y sentirse exento de toda influencia política y no debe dar base con su conducta para la creencia de que sus ideas políticas influyen en el cumplimiento de sus funciones judiciales.

El referido Canon XIII tiene como base la Sección 12 del Artículo V de la Constitución del E.L.A., L.P.R.A., Tomo I, el cual establece con relación a las actividades políticas de los jueces que:

Ningún juez aportará dinero, en forma directa o indirecta, a organizaciones o partidos políticos, ni desempeñará cargos en la dirección de los mismos o participará en campañas políticas de clase alguna, ni podrá postularse para un cargo público electivo a menos que haya renunciado al de juez por lo menos seis meses antes de su nominación.

_____

e. hacer expresiones, comentarios o manifestaciones públicas sobre asuntos o actos de naturaleza político-partidista; (…) (citas omitidas).

En esencia, el Canon XIII hace un listado, <u>no taxativo</u>, de <u>actividades y expresiones "políticas" que le están vedadas a los jueces</u>. Así, por ejemplo, prohíbe que los jueces participen en campañas políticas; ocupen cargos políticos; aporten dinero a candidatos, organismos o partidos políticos; participen en reuniones, tertulias, asambleas, primarias u otros actos políticos; endosen candidatos para posiciones de nombramiento gubernamental o líderes políticos; mantengan relaciones estrechas que le identifiquen con figuras o líderes políticos; participen en reuniones con funcionarios sobre asuntos que guarden estrecha relación con asuntos políticos; fomenten los intereses de organismo o partido político alguno, etc.[8] Incisos (a), (b), (c), (d), (e), (g), (h), y (j) del Canon XIII.

<u>El fin de estas prohibiciones es mantener la independencia judicial, principio fundamental de nuestro ordenamiento judicial</u>. El <u>propósito</u> del mencionado Canon, en conjunto con la antes citada disposición constitucional, <u>es prohibir todo tipo de participación de los jueces en las controversias relativas a asuntos políticos que se llevan a</u>

---

[8] En consecución del principio que el juez debe estar exento de toda parcialidad política y no dar base con su conducta a la creencia de que sus ideas políticas ejercen sobre él alguna influencia en el cumplimiento de sus funciones judiciales, este Tribunal, mediante resolución de 6 de diciembre de 1974, prohibió la participación de los jueces en primarias que celebrara partido político alguno. En este año, se trataba del Canon 18 de Ética Judicial de 1957, del cual proviene el Canon 13 de 1977.

cabo en nuestro País o que éstos se involucren de cualquier forma en el quehacer político del País. La razón de ser de este Canon es que la participación de jueces en la esfera política podría tener el efecto de desmerecer y lesionar la imagen del juez en la comunidad en que ejerce su delicado ministerio ya que dicha participación puede causar divisiones, y enconos, no sólo entre la ciudadanía y la Judicatura sino entre los propios integrantes de la Rama Judicial.

El asunto de la participación de los jueces en asuntos "políticos" ha sido objeto de análisis en varias decisiones de este Tribunal. En el 1980, en el caso de <u>Ortiz Angleró</u> v. <u>Barreto Pérez</u>, 110 D.P.R. 84 (1980), --ante una posible expresión del Tribunal sobre la constitucionalidad y legalidad del Referéndum sobre la propuesta enmienda constitucional que afectaba el derecho absoluto a la fianza-- este Tribunal expresó que el asunto de si "debe o no enmendarse la Constitución del Estado Libre Asociado para limitar el derecho a fianza ... es una controversia de índole política sobre la que este Tribunal no puede pronunciarse".[9]

---

[9] El ex-Juez Negrón García, en su Opinión concurrente, abordó el tema de las expresiones públicas de los jueces y su posible efecto en la ciudadanía y en la imagen de imparcialidad de la rama judicial. A esos efectos expresó en cuanto al Canon XIII que el mismo constituía una inhibición ética dimanante del cargo que existía sin perjuicio al derecho al sufragio ni a tener creencias o ideas políticas.

Por otro lado, en el 1988 el entonces Juez Presidente Pons Núñez y el entonces Juez Asociado Negrón García criticaron a la Ramas Ejecutiva y Legislativa por intentar sustituir al Juez Arbona Lago como Juez del Tribunal Superior.[10] Las mencionadas expresiones fueron apoyadas por este Tribunal, y tuvieron como resultado la celebración de

---

[10] El entonces Juez Presidente Pons Núñez se expresó de la siguiente forma:

> Una de las mayores responsabilidades que tiene la Rama Judicial es proteger los intereses particulares y sociales de los ciudadanos en contra de los errores y abusos de poder de los organismos gubernamentales.

> En el caso particular del Juez Arbona, por su claro, limpio y distinguido historial, la falta de explicación para su sustitución [--]combinada con determinaciones judiciales suyas desfavorables a organismos gubernamentales[--] da lugar a la especulación prevaleciente de que su sustitución obedece a recomendaciones y juicios [fundados] en criterios ajenos a las más sanas normas democráticas susceptibles a ser interpretados como atentatorios contra la independencia de criterio judicial.

Por su parte, el entonces Juez Asociado Negrón García expresó lo siguiente:

> La percepción pública es que lamentablemente el Primer Ejecutivo ha sido mal informado y que su determinación responde a fuentes divergentes sobre los méritos del Juez Arbona Lago y al carácter absoluto del ejercicio de su facultad constitucional. El primer aspecto es crucial. Por naturaleza de las funciones judiciales, toda decisión se presta a ser defendida por el favorecido y rechazada por el litigante o abogado insatisfecho. Sin embargo, dentro de la natural discrepancia y confrontación de criterios, las fuentes de acceso subrepticias, incógnitas y directas al oído del Primer Ejecutivo conllevan el peligro de estar matizadas de revanchismo personal.

una Sesión Especial de la Conferencia Judicial para tratar

el tema de la independencia judicial. Véase: Convocatoria a

una Sesión Especial de la Conferencia Judicial. 120 D.P.R.

838 (1988). En relación con dichas expresiones no se inició

procedimiento alguno contra los referidos Jueces ni surgió

controversia alguna por alegadas violaciones a los Cánones

de Ética.[11]

---

[11] A esos efectos; durante la celebración de la mencionada Sesión Especial de la Conferencia Judicial, el Juez Asociado Rebollo López emitió una Opinión disidente en la cual se expresó en los siguientes términos:

> El caso del Hon. Guillermo Arbona Lago, 'juez símbolo' de esta Sesión Especial sobre independencia judicial, es triplemente trágico.

> En primer lugar, se trata del intento, a destiempo, de sustituir a un juez laborioso, eficiente, competente, honrado e íntegro que a través de doce (12) largos años ha honrado y le ha dado lustre, por medio de sus ejecutorias, a la Judicatura puertorriqueña. Se trata, en resumen, de un atentado, en su forma más cruda, contra un miembro de la Judicatura puertorriqueña.

> En la única ocasión en que un ser humano accede voluntariamente a que se le ampute una parte de su cuerpo es cuando la misma está dañada y enferma y constituye una amenaza para su salud y bienestar general.

> El Poder Judicial es un solo cuerpo. La acción de sustituir al compañero Arbona Lago constituye un intento de cercenar una parte saludable y llena de vida de ese cuerpo judicial. Sorprende, en su consecuencia, que la cabeza de ese cuerpo judicial --el Tribunal Supremo-- no se exprese en el día de hoy en evitación de esa amputación.

> Aparte del mensaje escalofriante que tiene esta acción del Poder Ejecutivo sobre el resto de la actual Judicatura puertorriqueña, el mismo tendrá un efecto extraordinariamente nocivo a largo plazo sobre dicha Judicatura en el aspecto de reclutamiento. Cabe preguntarse, ¿qué joven abogado competente estará en el futuro en disposición de abrazar la carrera

(Continúa . . .)

En *In re* Solicitud Cepeda García, 130 D.P.R. 18 (1992), atendimos una querella presentada como consecuencia de unas críticas realizadas por dos Jueces de este Tribunal al entonces Gobernador por la práctica de nombrar a políticos a puestos en la Judicatura. En aquella ocasión, hicimos referencia a otras instancias en que Jueces de este Foro habían realizado manifestaciones que podrían adquirir trascendencia política. Por ejemplo, la ocasión en que el entonces Juez Presidente Trías Monge se expresó, en un Mensaje a la Asociación de Miembros de la Policía, criticando a la Policía de Puerto Rico por estar muy "politizada". [12] En este caso, a pesar del "matiz político" que tomaron dichas expresiones, este Tribunal no se pronunció sobre la aplicación de los Cánones de Ética en cuanto a la conducta del entonces Juez Presidente.

Sobre las expresiones particulares de los jueces querellados, este Tribunal expresó en *In re* Solicitud Cepeda García, ante, que:

> Al cumplir con el deber de fortalecer la Rama Judicial, los jueces debemos prudencialmente

---

> judicial cuando su permanencia en la misma va a depender del capricho incomprensible de una persona?

Contra el Juez Asociado Rebollo López tampoco se inició procedimiento alguno por violación a los Cánones de Ética Judicial. Claro está, dichas manifestaciones se hicieron en defensa de la independencia judicial. Véase: *In re* Conferencia Judicial de Puerto Rico, 122 D.P.R. 420 (1988).

[12] Como consecuencia de dichas expresiones, el referido funcionario tuvo que inhibirse de participar en un caso relacionado con sus expresiones. Véase a esos efectos: Santiago v. Superintendente de la Policía, 112 D.P.R. 205 (1982).

evitar pronunciamientos y juicios a destiempo sobre asuntos sometidos a su consideración o que podrían ser susceptibles a serles sometidos. Ahora bien, el hecho de que alguna manifestación de un juez de este Tribunal adquiera matices políticos y lo involucre en una controversia pública no necesariamente convierte dicha conducta en una contraria a los cánones de ética judicial. A lo sumo, podría resultar, como ocurrió en el caso de Santiago v. Superintendente de la Policía, supra, que los jueces involucrados en el debate público se tengan que inhibir en cualquier caso que surja relacionado con la polémica. *Ibid* a la pág. 28. (Énfasis nuestro).

Este Tribunal, en el citado caso de Cepeda, ante, resolvió que los Jueces no habían violado el Canon XIII porque sus expresiones estaban dirigidas a defender la integridad y la independencia de la Rama Judicial. El Tribunal procedió a ordenar el archivo de la queja, "por falta de jurisdicción", por razón de no tener autoridad para disciplinar a sus miembros.

En *In re* Vigencia de Limitaciones Constitucionales y Éticas Aplicables a los Miembros de la Judicatura Puertorriqueña ante el Referéndum de Enmiendas Constitucionales de 6 de noviembre de 1994, 136 D.P.R. 693 (1994), este Tribunal se enfrentó a una solicitud presentada por varias personas para que se emitiera una resolución que prohibiera a todos los jueces del país que participaran, directa o indirectamente, en actividades a favor o en contra de la enmienda constitucional propuesta en el Referéndum de 6 de noviembre de 1994 sobre cómo se determinaría el número de integrantes de este Tribunal. Debe señalarse que se había presentado, además, una

querella contra el Juez Pierre Vivoni por haber estado participando de forma activa en el debate público con relación a la aludida enmienda constitucional propuesta. En dicho caso, emitimos resolución a los efectos de declarar no ha lugar la solicitud presentada y archivar la querella contra el Juez Pierre Vivoni por inmeritoria.

Sobre el aspecto de la prohibición en cuanto a que los jueces participaran en campañas políticas, en dicho caso determinamos que la Sección 12 del Artículo V de la Constitución y el Canon XIII se referían a la intervención de éstos en la promoción de candidaturas a cargos electivos, a su colaboración con el proselitismo partidista y otras actividades de naturaleza similar. "De ningún modo vedan la expresión pública de los jueces sobre sus propias ideas acerca de los asuntos que atañen a la Rama Judicial cuando se hace en foros idóneos que no sean actos, reuniones o asambleas de carácter político-partidista." P.694. (Énfasis nuestro).

Expresamos, además, en el citado caso, que el ejercicio de libertad de expresión de los jueces, en cumplimiento con el deber de defender y promover la independencia del Poder Judicial, estaba protegido cabalmente tanto por la Constitución de Estados Unidos y la del Estado Libre Asociado de Puerto Rico como por los Cánones de Ética Judicial y por el Código de Ética Profesional que rige a los abogados de Puerto Rico.

Allí enfatizamos que la independencia judicial no era un asunto de naturaleza político-partidista y que por ello, no podía estar vedado que los jueces dilucidaran públicamente dicho principio. A diferencia del caso de *Ortiz Angleró*, ante, aquí se trataba de un asunto que afectaba la Rama Judicial y por ello se autorizó la participación de los jueces. Además, citando a *In re Solicitud Cepeda García*, ante; Retiro del Hon. Víctor M. Pons Núñez, 129 D.P.R. 931 (1992); y Convoc. Sesión Especial Conf. Judicial, ante, reiteramos que el hecho de que alguna manifestación de un juez, en defensa de la independencia judicial, coincidiera con una controversia pública con matices políticos no deslegitimizaba tal manifestación. *Ibid*, pág. 695.

En consecuencia, de un análisis del entonces vigente Canon XIII, del actual Canon XXVIII, y del precepto constitucional que los inspira, podemos razonablemente concluir que la prohibición a los jueces en cuanto a no hacer manifestaciones político-partidistas --dentro del contexto del propósito general de los referidos Cánones y en situaciones que no tengan nada que ver con la defensa de la independencia judicial-- incluye toda aquella manifestación que claramente identifique su ideología política o que induzca a pensar que está afiliado con algún partido político, que exalte o promueva alguna ideología, a algún partido o a sus miembros sobre otro, o que critique sus ejecutorias; de modo que pueda inferirse que sus

funciones pudieran ser afectadas por sus creencias políticas. Dichas expresiones serían violatorias de los referidos Cánones.

Repetimos, el fin esencial del Canon XIII, y el ahora vigente Canon XXVIII, es mantener a los jueces y juezas con independencia de criterio, que ejerzan sus funciones libres de todo favoritismo político que afecte la adjudicación imparcial de las controversias y evitar de esta forma el proselitismo político en la Judicatura.[13] De esta forma se logra que la comunidad tenga la confianza que las ideas políticas particulares de cada juez no serán un factor que afecte su desempeño judicial.

IV

Analizadas las expresiones de la Juez Hernández Torres dentro de este contexto no coincidimos totalmente con la determinación de la Comisión en cuanto a que las mismas no fueron de tal envergadura como para no ser violatorias del Inciso (f) del Canon XIII de Ética Profesional. En otras palabras, somos del criterio que algunas de las manifestaciones de la Juez Hernández Torres resultan totalmente incompatibles con el referido Canon XIII.

Es correcto que las expresiones que hiciera la querellada en cuanto a la Legislatura se hicieron en forma

---

[13] El principio de independencia judicial ahora se encuentra consagrado de forma independiente en el Canon II de los nuevos Cánones de Ética Judicial.

de crítica general sin que estas constituyeran un plan de hacer campaña política, ni involucrarse de forma alguna en el quehacer político. En ese sentido, no fueron unas manifestaciones político-partidistas. Sin embargo, en una parte de la entrevista en controversia, la Juez Hernández Torres criticó, específicamente, el trabajo de las minorías, compuestas por el Partido Popular Democrático y el Partido Independentista Puertorriqueño, y exaltó la labor que hicieron tanto ella como José Granados Navedo y Edison Misla Aldarondo cuando fueron minoría; esto últimos todos miembros del Partido Nuevo Progresista; además, mencionó otros nombres de legisladores de este mismo partido, infiriendo que éstos sí trabajaban, a diferencia de los demás.[14] Estas expresiones resaltaron, no hay duda, la imagen de unos miembros de un partido político sobre otros; expresiones que no tienen nada que ver con la defensa de la independencia judicial.

En fin, la Juez Hernández Torres, mediante sus expresiones, causó la impresión que su función como jueza se podría ver influenciada por sus ideas políticas, situación que precisamente intenta evitar el mencionado Canon XIII.[15] Según mencionáramos anteriormente, el Canon XIII veda que los jueces hagan manifestaciones político-

---

[14] Nos referimos a las menciones que hiciera a Néstor Aponte, Leo Díaz, Pedro Figueroa, Aníbal Vega Borges, Ángel Cintrón, Toñito Silva y Rolan Maldonado.

[15] Por ello, no se trata meramente de una "crítica cándida y de buena fe" como alega la querellada.

partidistas. <u>Esto incluye, sin limitarse a, manifestaciones que exalten la labor de miembros de algún partido político.</u> No incluye, según expresáramos, aquellas manifestaciones que, aunque adquieran matices políticos, se hagan en defensa de la independencia judicial o sobre asuntos que conciernen a la Rama Judicial.[16]

El respeto y confianza en la judicatura que tenga la ciudadanía depende, de manera principalísima, de la conducta que observen los jueces; los cuales en el desempeño de sus funciones deben ser laboriosos, <u>prudentes</u>, y, sobre todo, imparciales. "[E]l juez, como tal, es el árbitro designado por la sociedad, a través del Estado, para juzgar la conducta humana. Para poder merecer el respeto de la sociedad y el acatamiento de sus decisiones, ha de ser, y ser visto, como un ser humano sin tacha. Ello exige, no solamente ser bueno, sino también parecerlo." Carlos J. Irizarry Yunque, <u>La Ética Judicial</u>, Forum 1-4, 1993, pág. 4.

El juez tiene que ser <u>previsor</u> y analizar las posibles consecuencias de sus actos en términos de las impresiones que podrían recibir terceras personas. Rafael J. Torres Torres, op. cit. pág. 16. Además, debe siempre estar muy pendiente de situaciones que puedan afectar negativamente

---

[16] Coincidimos, sin embargo, con la Comisión en cuanto a su determinación que la Juez Hernández Torres no violó el Inciso (i) del referido Canon ya que sus críticas se hicieron a la Legislatura en general y no a algunos de sus miembros en particular.

su imagen y poner en duda su sano e independiente criterio judicial. Luis Mariano Negrón, Ética y Disciplina Judicial en Puerto Rico, 1987, pág. 131.[17]

A esos efectos, expresamos en *In re* Participación Jueces, 80 D.P.R. 784, 786-787 (1958), que:

> Los jueces son parte de la comunidad en que viven y por la posición que en ésta ocupan son llamados ocasionalmente a prestar su concurso en actividades de interés general, sean éstas de origen privado o estén auspiciadas por funcionarios públicos. Esa cooperación, sin embargo tiene que darse dentro del marco de la Constitución, la ley y los Cánones de Ética Judicial y en armonía con la dignidad y las funciones de los tribunales. Tales limitaciones imponen a los jueces la obligación de cerciorarse, por todos los medios dignos asequibles, de los propósitos y circunstancias de los actos a los cuales se les invite y de abstenerse de asistir a aquéllos que por su carácter les están vedados o que razonablemente puedan dar lugar a la impresión de que se están transgrediendo esos límites. Es ésta la única manera en que puede la judicatura mantener incólume su reputación de absoluta independencia.

En atención a todo lo anteriormente expuesto, somos del criterio que las expresiones de la Juez Hernández Torres, en cuanto pasaron juicio sobre la productividad legislativa, específicamente en torno a su poca productividad; constituyeron una crítica sobre determinadas políticas seguidas por esa Rama, y una crítica sobre el rol asumido por las minorías parlamentarias, exaltando a otras minorías específicas de otros tiempos, fueron contrarias a las disposiciones de los Cánones I y XIII de Ética Judicial, ante.

---

[17] Citado en In re Ortiz Rivera, res. el 21 de diciembre de 2004, 2004 T.S.P.R. 209.

La referida funcionaria debió haberse <u>abstenido</u> de hacer dichas manifestaciones recordando que no era sólo una "ex legisladora" sino que, en el momento en que realizó la entrevista, ocupaba el cargo de juez. <u>Los jueces, repetimos, deben de abstenerse de hacer juicios críticos "políticos" en situaciones que nada tengan que ver con la defensa de la independencia judicial</u>. En honor a sus deberes y obligaciones la Juez Hernández Torres debió mantener presente <u>que, en sus críticas, se estaba refiriendo a otra rama de gobierno y que sus expresiones no tenían nada que ver con sus funciones en la Rama Judicial</u>. Este proceder fue <u>imprudente</u> y además, fue <u>contrario</u> al Canon I, que impone el deber de los jueces de actuar con prudencia, respeto, y con la integridad que requiere su ministerio.

Por los fundamentos que anteceden y en vista de que se trata de una primera ofensa, <u>consideramos procedente, únicamente, amonestar a la Juez Zaida Hernández Torres, apercibiéndosele contra futuras infracciones</u>.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Zaida Hernández Torres

AD-2001-3

SENTENCIA

San Juan, Puerto Rico, a 11 de mayo de 2006

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia amonestando a la Juez Zaida Hernández Torres y apercibiendo a ésta contra futuras infracciones a los Cánones de Ética Judicial.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurrió en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino. El Juez Asociado señor Rivera Pérez se inhibió.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo